STATE OF MISSOURI, AT THE RELATION OF BISMARK GRILL, INC., A COR-
PORATION, DEFENDANT IN ERROR, v. JOSEPH F. KEIRNAN, DIRECTOR
OF LIQUOR CONTROL, FOR KANSAS CITY, MISSOURI, PLAINTIFF IN
ERROR.—181 S. W. (2d) 798.

Kansas City Court of Appeals.   May 8, 1944.

*Wm. E. Kemp* and *Arthur R. Wolfe* for plaintiff in error.

*Clyde Taylor* and *Walter Calvin* for defendant in error.

CAVE, J.—This is an action, in *mandamus*, brought by the relator against Joseph F. Keirnan, Director of Liquor Control for Kansas City, seeking to have respondent issue to relator a retail dealer's *license* entitling it to dispense intoxicating liquors at 900 Walnut Street, Kansas City.

An alternative writ was issued commanding respondent to either issue the *license* or show cause for his refusal to do so. The trial resulted in a judgment which, in effect, made the alternative writ peremptory, commanding respondent to issue relator *a permit for a license* to dispense intoxicating liquors at said address. Respondent has appealed. The parties will be referred to as they were in the trial court, relator and respondent.

We have italicized the word *license* and the clause *a permit for a license* because relator's cause of action, as stated in its petition, is founded upon the refusal of respondent to issue it a *license*. Nowhere in the petition is any reference made to *a permit for a license*. Throughout the hearing before the director and the trial in the circuit court, these two matters were referred to interchangeably. Sometimes there was a reference to an *application* for a *license* and at other times an *application* for a *permit*. Under the city ordinance the proper procedure is for an applicant to apply to the Liquor Director for a *permit* and if it is issued by the director, then it is presented to the Commissioner of Licenses of the city who, upon the payment of the proper fee, issues the *license*. The *permit* is good until revoked, while the *license* is issued for a period of six months. We mention this distinction because there is some discussion of it in the briefs. We do not consider it of vital importance because when the whole record is read and considered it is apparent that relator was seeking *proper authority,* by whatever name or term, to sell intoxicating liquors at retail and such authority was denied it by respondent, and the trial court, by its judgment, ordered that proper authority be issued. We shall decide the validity of that judgment without

regard to the loose use of the two terms in the hearing before the Director and the trial in the circuit court.

The application now under consideration was filed by relator, Bismark Grill, Inc., a corporation, with respondent, who will hereafter be referred to as the director, sometime shortly after June 2, 1941, the exact date does not appear in the record.

Relator's petition alleges matters pertaining to its incorporation, capital stock ownership, officers and directors, its filing with the Director of Liquor Control its application for a license to sell intoxicating liquors by the drink; that a public hearing was had on said application, that the director refused to grant same. It is then alleged, "that said refusal is unwarranted, capricious, illegal and without warrant or excuse; that under and by virtue of the provisions of said ordinances of Kansas City and the application made, it was the legal duty of the said Joseph Keirnan, as said Director of Liquor Control, to issue the license to relator as applied for."

Respondent's return pled certain provisions of the ordinances of Kansas City and properly raised issues authorizing the introduction of the evidence herein detailed.

The record discloses that on January 25, 1935, "a permit to sell liquor at retail" was issued by the then Director of Liquor Control to "Bismark Grill (L. A. Lyons)." The permit was numbered 319A. It is clear from all the evidence that at that time L. A. Lyons was doing business under the trade name of "Bismark Grill" because Relator, "Bismark Grill, Inc.," was not incorporated until November 5, 1938. Furthermore, a corporation could not be issued a permit and license to sell liquor at retail under the then existing ordinances of Kansas City. So Relator's contention in its brief that the permit issued in 1935 was issued to it, is without foundation and we need not discuss that question further.

The permit issued to Lyons was valid until revoked, but the license was renewable semi-annually upon proper application. He continued to operate the "Bismark Grill" until June, 1941. It appears that in March, 1941, a fight took place between Lyons and a customer in the Grill, and as a result many letters were written to the director and mayor. Thereupon, the Director began an investigation of Lyons and his business establishment. He learned that Lyons had been twice convicted of felonies in Cleveland, Ohio, and that he concealed such fact by making false affidavits in connection with his application for a liquor permit and application for the transfer of his liquor permit and license upon the removal of the "Bismark Grill" from 820 Walnut to 900 Walnut Street.

The director, personally, and through his inspectors also found that the Grill was being operated in violation of the ordinance which prevented the use of curtains or partitions or anything which would conceal any part of the premises where customers were served in-

toxicating liquor. He notified Lyons to remove the curtains and partitions, but such notice was not complied with.

On May 9, 1941, the director gave written notice to Lyons of a hearing to revoke permit No. 319A, and the hearing was set for May 20th. The matter was continued from time to time until June 16, 1941. The charges of violation of the ordinance, as contained in the notice, were that Lyons had assaulted and inflicted in juries upon a customer; that his permit had been obtained through false and fraudulent representations; that he twice been convicted of felonies; and that he had violated the ordinance by disregarding repeated requests of the director to remove certain partitions, curtains and shades from the premises.

After a hearing on June 16, the cause was continued until June 26 for further hearing. It appears that after the above notice had been served on Lyons his attorney conferred with the director and advised that he wanted to file an application for a permit on behalf of "Bismark Grill, Inc.," a corporation (the relator herein), and it was agreed that time would be given for that purpose and that the hearing on the application would be at the same time and place as the hearing to revoke Lyons' permit. The corporation's application was filed and both matters heard at the same time, and on July 7, 1941, Lyons' permit and license was revoked and relator's application for a permit denied.

At the hearing before the director concerning the application of the corporation for a permit, it developed that the certificate of incorporation was issued by the Secretary of State on November 5, 1938, and that its corporate capital stock of $2000 was divided into 100 shares, all of the par value of $20 each; that ninety-eight shares were owned by Leonard A. Lyons (the same person as L. A. Lyons); one share by Ann B. Lyons, his wife, and one by Catherine Tassell, his sister. The Board of Directors consisted of those three persons. From the time of its incorporation the officers were Leonard Lyons, president and treasurer, Catherine Tassell, vice president and Ann B. Lyons, secretary. On June 2, 1941 (after the above notice to revoke was served on Lyons), a special meeting was called of the directors and stockholders of "Bismark Grill, Inc." At that time Lyons tendered his resignation as president, treasurer and director of the corporation, which was accepted. Thereupon, Roy B. Brewer was elected president and director to succeed Lyons. At that meeting president Brewer was "authorized and directed to apply to the city of Kansas City and the State of Missouri for all necessary licenses to be used in connection with the business of the corporation." On the next day, June 3, the certificate of stock for ninety-eight shares held by Lyons was surrendered and new certificates were issued, one to Brewer for forty-nine shares and one to Ann B. Lyons for forty-nine shares. It was stated there was a substantial consideration for the

transfer of this stock, but the record is not clear what the consideration was. When the Director asked, ''Who will be in active charge of the business?'', he was informed, ''Well, as far as matters of policies are concerned, Brewer will be. Actually serving the bar over there and keeping it clean, perhaps directing the help, Leonard Lyons will be. It would have to be that way. . . . I don't think any one could go in there and run the business unless Lyons is there.'' Brewer admitted that he had never had any experience in operating a business of the kind and character carried on by the Bismark Grill, Inc. When Lyons was asked why he transferred the stock to Brewer, he replied, ''Well, I transferred the stock to him in the first place to get a license. . . . Q. Well, now, as a matter of fact, Mr. Lyons, Brewer is running that place of business for you, isn't he? A. Yes, sir.'' There was evidence to the effect that Brewer went to the place of business two or three times each week, but that Lyons was actually in charge, in that he purchased the supplies, hired and fired the help, supervised and conducted its business from 8 A. M. to 9 P. M. and at the time of the hearing, was the only person who had authority to draw checks on the bank account of the corporation.

The Director revoked Lyons' permit No. 319A because he had been convicted of a felony and had sworn falsely concerning that fact. There is no dispute about the propriety of that revocation.

At the trial in the circuit court the director testified that he denied the application of the corporation because he regarded Brewer as the *alter ego* and front for Lyons; that he did not consider Lyons a man of good moral character because of his convictions and false affidavits; that Lyons had refused to comply with his request that the partitions and curtains be removed; and because he believed and found that the corporation would continue to employ Lyons as its real manager and since his permit and license had been revoked, this would be in violation of the ordinance. [Sec. 10-32.12.] There was evidence before him to support such findings.

There is an exhibit in the record identified as respondent's Exhibit F, the original of which had been lost before the bill of exceptions was made and approved. Relator and respondent do not agree on its exact form and contents, but it is copied into the record in the form contended for by relator and not agreed to by respondent. This exhibit purports to be the written reason given by the director for the refusal of the application. The only reason assigned therein is because relator has in its employ L. A. Lyons ''whose liquor license has been revoked.'' Relator contends the director is bound by the finding specified in this exhibit and cannot assign any other reasons for denying its application. We shall discuss this later.

In the final decrees making the writ peremptory, the trial court, among other things, found:

"There are many requirements and conditions, technical and otherwise, that must be complied with before this or any other similar relator or applicant can obtain such a license as is sought herein. All of these conditions, however technical, have an underlying common purpose which is that the sale of liquor shall be made, if at all, by reputable people under proper circumstances and in an orderly way . . . In this connection the proof conclusively shows that this relator conducts a reputable place in such manner as to attract and enjoy the patronage of reputable people of good deportment. . . . Therefore, relator conducting its business in the manner sought to be expected by the various legal requirements and prescriptions of the law, such license or permit should be granted unless there is some unsurmountable technical reason why the same should not be done. . . . The testimony shows that a stockholder of the corporate applicant, who is employed in the direct service furnished, was many years ago convicted of a felony for which he paid the penalty exacted by law. This would be a ground to refuse him a license as an individual and the court so finds. However, the applicant here is a corporation which was organized and has been in existence and in active management of the business before this controversy arose. It is contended by the respondent that the corporate existence should be disregarded because it is but a cloak to work a fraud. . . . The court finds that there is no such proof here. . . . The court recognizes that the matter of granting a license or permit is largely one of discretion delegated in the first instance to the Director of Liquor Control and he has wide latitude in the exercise of that discretion. But the court finds that relator conducts a decent, orderly place of business in a manner respectful of and consistent with the law, so that all the beneficial objectives of regulatory provisions of the liquor law are accomplished. Under those circumstances the court finds no reason why any minor doubts as to the *bona fides* of the incorporation of relator should be resolved against relator and thus accomplish legal grounds for denial of relator's license. It is therefore by the court considered, ordered and adjudged that the preliminary writ of *mandamus* heretofore issued is made permanent. The respondent is required by virtue of such writ forthwith to issue to the applicant a permit for a license as prayed in the petition. . . ."

The Liquor Control Ordinance requires any person desiring to secure a retail permit and license to make application therefor to the Director of Liquor Control in writing and under oath and that such application shall state, among other things, "whether or not he has ever been convicted of a felony." The ordinance also provides that no license shall be issued to any person who is not a citizen of the United States nor to any person who has been convicted of a felony; that licensee be of good moral character and should at all times keep an orderly place.

Respondent insists that the court erred in refusing his requested declaration in the nature of a demurrer to the evidence and in rendering judgment for relator. In this connection he insists that, as liquor director, he was exercising a judicial discretion, in refusing the permit, which discretion cannot be controlled by the courts by *mandamus*; and that the evidence failed to show he abused such discretion or exercised same in an arbitrary, capricious or unlawful manner.

Under the ordinances of Kansas City a permit and license are required for the sale of intoxicating liquor. The exclusive power to issue or revoke such permit or license is vested in the Director of Liquor Control. In granting or refusing permits or licenses he exercises a judicial discretion. In construing this same ordinance we so held. [Mangieracina v. Haney, 141 S. W. (2d) 89, 91.]

Relator insists that *mandamus* is an action at law and the finding and judgment of the trial court is binding on this court if supported by substantial evidence or reasonable inferences therefrom. He cites such cases as State ex rel. Haensler v. German Ins. Co., 169 Mo. App. 354; State ex rel. v. Kernes, 180 Mo. App. 355; and State ex rel. v. Dryer, 183 Mo. App. 463. We have read those cases and find them not controlling in the instant case. In Dolman v. Dickey, 280 Mo. 536, our Supreme Court distinguishes that line of cases and announced the proper rule as follows, l. c. 553:

"It is argued by respondent that a finding of facts by a court in a *mandamus* proceeding is binding upon this court as is such finding in any other kind of a case. That is true enough *where the facts are such as the circuit court has authority to find. It cannot be inferred from the rule that the trial court is authorized to take evidence and find the facts which must be determined on an investigation by the body whose act is sought to be compelled.* The cases cited are where the finding of the trial court turned upon the facts showing that the body, against whom the writ was directed, acted capriciously and in gross absence of discretionary powers. In this case there was no specific finding that the board acted capriciously or arbitrarily and no evidence to that effect. . . . *The trial court especially found from the evidence that there was a substantial compliance, and granted the writ on that theory, not on the theory that the board acted arbitrarily."* (Italics ours.)

That is the situation here. The court did not find that the director acted capriciously and arbitrarily. As shown by the judgment he found facts which led him to believe the permit should be issued, and made the writ peremptory on that theory. It should be observed that the court, among other things, found relator "has been . . . . in active management of the business before this controversy arose, . . . that relator conducts a decent, orderly place of business. . . . Consistent with the law, . . . " If that finding is true, then relator (the corporation) had been operating in violation of law, because it had never applied for or received a permit or license from

the City or State, to manage and conduct this business. We are not bound by the finding and judgment of the trial court in this case.

Relator next contends that the director has no discretion to issue a license "where the standards and restrictions of the ordinance have been met and fully complied with," because the ordinance is mandatory under such circumstances. The word *shall* is frequently used in the ordinance in directing what the Director shall do under certain circumstances. From that premise it argues that it is *mandatory* on the director to issue the permit if the applicant *has met and complied with such requirements* and standards. Relator overlooks the fact that it is the duty of the director to exercise his *judicial discretion* in deciding that very issue. That is the kernel of this suit. Did he abuse his discretion in denying the application? There is no merit in the contention that it became his *mandatory* duty to issue the permit because the word *shall* is used in the ordinance. [State ex rel. v. Thornhill, 174 Mo. App. 469.] In that case we were discussing a statute (Sec. 7179, R. S. 1909) which made it the *mandatory* duty of the county court to grant a saloon license if (among other things) the applicant had obtained the signatures on his petition of a two-thirds majority of the qualified signers in the block, and held that if the county court determined that the petition lacked that number of signatures its finding could not be reviewed by *mandamus*. We said, l. c. 475, "If the circuit court in a *mandamus* case can hear the evidence and decide the questions involved in the granting of a saloon license, and order the county court to issue the license, then it is the circuit court, and not the county court, that is granting it." That opinion, by TRIMBLE, J., reviews the authorities in this and other states on the questions here involved. It was recently cited and approved by the Supreme Court En Banc in State ex rel. Renner v. Noel, 140 S. W. (2d) 57. We see no good reason to depart from it.

In the Mangieracina case, *supra*, we were discussing relief by *mandamus* for denial of a license under this same ordinance and in an opinion by BLAND, J., said, l. c. 91-92:

"A person seeking *mandamus* must show that he has a clear, unequivocal, and specific right to have performed the thing demanded. A ministerial duty which may be enforced by the writ is one in respect to which nothing is left to the discretion of respondent in the performance of the duty. The remedy will not lie if the right is doubtful. Where a ministerial body is entrusted with the exercise of a function which requires the ascertainment of certain facts before performing a specific duty, *mandamus* will not lie to compel the performance. This is particularly applicable to municipal and other authorities in the issuance of a dram shop license, as the business of selling intoxicating liquor is not a right but merely a privilege to be granted or withheld at the exclusive discretion of the authority empowered to grant the license. . . .

"It is only in case where the facts essential to relator's rights are undisputed or have been confessed by the pleadings that the discretion of the licensing authority may be controlled by *mandamus*. [State ex rel. Foerstel v. Higgins, 76 Mo. App. 319; State ex rel. Thornhill, *supra*."

We rule this contention against relator.

It is contended that the director has no legal right to disregard the legal entity of the corporation separate from its stock holders and to refuse a permit to the corporation because one stockholder holding one share would not, as an individual, be eligible to license. The ordinance does authorize the issuance of a permit and license to a corporation and, among other things, provides: "Nor shall any corporation be granted a license hereunder unless the officers and directors and principal stockholders of such corporation are of good moral character and unless the managing officer of such corporation is of good moral character and a qualified legal voter and tax paying citizen of Jackson County. . . ."

It is argued that when a corporation is legally organized and has its charter and meets the foregoing requirements, together with other ordinance provisions, it, *as a matter of law,* is entitled to a permit and if the director refuses such permit upon any other grounds, he acts without warrant of law and arbitrarily and such action is controlled by *mandamus*. As stated above, the evidence discloses that the corporation was organized in 1938, with L. A. Lyons as its principal officer, director, stockholder and manager. This condition continued until after notice was served on Lyons of the hearing to revoke his permit and license. Thereafter, and very shortly before such hearing, Lyons sought to fade out of the picture by transferring his stock to his wife and his close personal friend Brewer, and resigning as president, treasurer and director. But, as shown by the evidence, he was to remain in active charge of the business. Under such circumstances, is the director stripped of his judicial discretion and compelled, *as a matter of law,* to issue a permit to the corporation? We think not. We said, in the Mangieracina case, *supra*, l. c. 91: "There are matters other than the mere statutory or ordinance qualifications to be considered in granting or refusing a dramshop license and it is within the authority or discretion of the licensing authority to ascertain not only whether the statute or ordinance has been complied with but to withhold the privilege of engaging in the liquor business upon other grounds, and this discretion cannot be revised by *mandamus*."

Conceding the corporation was a legal entity, nevertheless the director had the authority, in the exercise of his discretion in passing upon the matter, to arrive at his own conclusions concerning what part Lyons would play not only in the affairs and policies of the corporation itself, but also in the corporation's operation and conduct of the liquor establishment in question.

In discussing a somewhat similar situation in the case of May Department Stores Co. v. Union Electric L. & P. Co., 107 S. W. (2d) 41, 1. c. 55, the Supreme Court said: "Men have the right to use legal forms which they believe to be helpful in accomplishing proper purposes. The question should not be merely 'instrumentality' but 'instrumentality for what purpose.'"

In Wilks v. Liquor Control Commission, 190 Atl. 262, the Supreme Court of Connecticut, in discussing a case in which the wife had applied for a permit for selling intoxicating liquor after her husband's permit had been revoked because of law violation, continued her husband in the conduct of the business. The court held that this was "ample grounds for the reasonable conclusion by the commission that under the circumstances the plaintiff (wife) was an unsuitable person."

Furthermore, the ordinance which authorized the granting of the permit to a person, partnership or corporation, also provides that it shall not be granted to a person, partnership or corporation ". . . who employs in his business as such dealer any person whose license has been revoked."

At the time relator's application for a permit was denied the director had revoked the permit and license of L. A. Lyons and the evidence was conclusive in the hearing before the director that the corporation continued to keep Lyons in active management of the corporation's place of business. This alone would authorize the director to deny relator's application.

Concerning the controversy of Exhibit F, even if it is conceded that the director assigned only one reason for denying the application, which was that relator had in its employ L. A. Lyons whose liquor license had been revoked, then it would appear that the above quoted part of the ordinance would authorize the action taken. However, we do not want to be understood as holding that the director was bound by the unsigned written memorandum or order filed at the time the application was denied.

In Wilcox v. Bryant, 156 Ind. 379, wherein the Supreme Court of Indiana was discussing the question of refusal of a liquor permit, it is said, 1. c. 382: ". . . The fact that a wrong or insufficient reason was given by the board is not material. A correct decision is not void or erroneous because an incorrect reason is given therefor." To support his contention that the Director is bound by the reasons given, relator quotes from 21 C. J., p. 1222, sec. 226. "The text is there discussing the doctrine of estoppel. What is said has no application to the point now under consideration.

Throughout its brief relator strenuously and ably argues that the director did not exercise a solemn judicial discretion but was actuated by personal whim. He calls to our attention a voluntary statement made by the director when testifying in the circuit court to the effect

that it was not necessary, under the ordinance, for him to grant a hearing upon the application for a permit. Relator says this is Bureaucracy running wild. It is a sufficient answer to say that the director did grant a full hearing; but we might add the ordinance does not provide for or require a hearing on such an application, although it does require a notice and hearing when it is sought to *revoke* a permit or license. The same situation exists in our state statute, as pointed out by the Supreme Court in State ex rel. v. Noel, *supra*. If such is not wise legislation, it must be corrected by the proper legislative body, not by the courts.

Relator not being entitled to the permit as a matter of law, and there being no substantial evidence that the director acted arbitrarily and capriciously and the trial court having made no such finding, we conclude the court erred in making the writ peremptory. The judgment is reversed. *Bland, J.*, concurs.