THE FLORENCE METHODIST CHURCH, THE FIRST BAPTIST CHURCH OF FLORENCE, THE FIRST WESLEYAN METHODIST CHURCH OF FLORENCE, ST. STEPHENS EPISCOPAL CHURCH, RESPONDENTS, v. THE TOWNSHIP COMMITTEE OF THE TOWNSHIP OF FLORENCE AND GERTRUDE CHRISTY, APPELLANTS, DEPARTMENT OF LAW AND PUBLIC SAFETY OF NEW JERSEY, DIVISION OF ALCOHOLIC BEVERAGE CONTROL, RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued October 31, 1955—Decided November 9, 1955.

88

Before Judges CLAPP, JAYNE and FRANCIS.

Mr. *George Pellettieri* argued the cause for appellant (*Messrs. Pellettieri & Rabstein,* attorneys).

Mr. *Martin L. Haines* argued the cause for the respondent churches (*Messrs. Dimon, Haines & Bunting,* attorneys).

Mr. *Samuel B. Helfand* argued the cause for the respondent Division (*Mr. Grover C. Richman, Jr.,* Attorney-General).

The opinion of the court was delivered by

CLAPP, S. J. A. D. The appellant, Mrs. Gertrude Christy, made application to the Township Committee of the Township of Florence for a transfer to herself of a plenary retail liquor consumption license and also for a place-to-place transfer of the license. The committee granted her application by a vote (according to the record) of 6 to 5. Appeal was then taken to the Division of Alcoholic Beverage Control by four churches. The Division reversed the committee, and Mrs. Christy now appeals to us.

The Division's decision, rendered by its Director, rests on a finding that in seeking the license, Mrs. Christy is acting as a "front" for her husband, James E. Christy, who under *N. J. S. A.* 33:1–25, 33:1–31.2 is disqualified to hold a license. He has been convicted of larceny, possession of lottery tickets, maintaining a gambling house and gaming, atrocious assault and battery, and false swearing. The first question raised by Mrs. Christy is whether this finding, that she is "a front" for him, is supported by the proofs.

She has been married to him for 20 years. In 1942, with moneys admittedly furnished by him, she bought the

premises now proposed for the tavern. Though she thereafter rented them to the Florence Athletic Club, she cannot remember who paid the rent. Moreover, she never inspected the premises in those years (except to go there occasionally for a drink) and so, professedly, never learned that (as one witness testified) the upper stories of the building were at the time used by Christy and another person as a "horse room" and for the operation of dice games. Some years later Christy (according to the same witness) attempted unsuccessfully to secure a liquor license in the name of the Florence Athletic Club, using the club apparently as a front for himself and at least one associate of his.

Mrs. Christy's story is that her father, desiring to provide her with a means of livelihood, offered her the $10,000 she needed to buy the liquor license now applied for. He, a tailor all his life, had then recently sold for $65,000 a farm standing in his name, in which he had never lived, but in which she and Christy had resided several years without paying rent. Was this $10,000 Christy's money? As the Director indicated, her testimony on various matters is to be discredited. She claimed she did not know how Christy got his money during their entire married life, though he provided her with several Cadillacs, diamond rings and the means to travel extensively. She "lived good," as she put it. For years Christy has had the repute of being a professional gambler.

It is significant that the application for the present license was made by her just before Christy got out of prison. It is significant too that both of them are now living right over the proposed tavern in an apartment from which he could readily manage the tavern; and further that she is totally inexperienced in the liquor business or any other business. The proofs are sufficient to sustain the Director's findings.

There is no question but that a license may be denied to one who acts in name only, just to serve the interest of some person disqualified under the statute. *Cf.* *Wilks v. Liquor Control Commission,* 122 *Conn.* 443, 190

*A. 262, 263 (Sup. Ct. Err. 1937); State ex rel. Bismark Grill v. Keirnan, 238 Mo. App. 507, 181 S. W. 2d 798, 803 (Ct. App. 1944); State ex rel. Nixon v. McCanless, 176 Tenn. 352, 141 S. W. 2d 885 (Sup. Ct. 1940).* Mrs. Christy's first contention fails.

The second question raised by her is whether the proofs before the Division warranted its interference with the action of the township committee.

█ The matter lay within the discretion of the committee, and hence the Division could not reverse in the absence of a manifest mistake or other abuse of discretion on the committee's part. However a discretion also is committed to the Division, and hence we will not interfere with its action unless we find that it has manifestly erred or otherwise abused its discretion. *Rajah Liquors v. Division of Alcoholic Beverage Control, 33 N. J. Super. 598, 600 (App. Div. 1955).*

██ We cannot say here that the Division clearly erred in finding (in effect) that there had been clear error on the part of the committee. After a hearing *de novo* before the Division, *Cino v. Driscoll, 130 N. J. L. 535 (Sup. Ct. 1943)*, the action of the local body is to be judged not solely on the basis of the matters before it, but also in the light of the proofs adduced in the Division. The proofs so adduced here are of sufficient strength to warrant the action taken by the Division in the case.

█ However, even apart from those proofs, it should be pointed out that pursuant to some alleged arrangement not appearing on the record, the committee refused to allow Mrs. Christy to be examined by counsel for the objectors in the hearing before it. It is not established that the objectors consented to this arrangement. Under the terms of the statute the committee is charged with a duty to conduct a public hearing, *N. J. S. A.* 33:1-24, and hence with a duty not to interfere with the production of proper proofs at such a hearing. See *Wilson v. Board of Com'rs of Jersey City, 94 N. J. L. 119, 122 (E. & A. 1920); Miner v. Larney, 87 N. J. L. 40, 41 (Sup. Ct. 1915); cf.*

*Handlon v. Town of Belleville,* 4 *N. J.* 99, 105 (1950). Mrs. Christy's second point fails also.

█ Her third contention is that most likely the hearer in this case actually wrote the conclusions and order signed by the Director. *Cf. Mazza v. Cavicchia,* 15 *N. J.* 498 (1954). However we were advised on the oral argument that the hearer did not write them; that he made no report, oral or written, to the Director and indeed completely severed his connection with the case at the conclusion of the hearing. This disposes of the third point.

Mrs. Christy's fourth point is that the Director's decision should be reversed because the hearer made no report. It is said first that the point was waived. At the conclusion of the hearing in the Division, this appears:

"The Hearer: Well, now gentlemen, you have the right to submit the matter to the Director on the record today, or to sum up, or submit briefs, or argue the matter before the Director. What is it you wish to do?
Mr. Pellettieri: I am willing to submit it on the record.
Mr. Dimon: I am willing to submit it on the record, sir.
The Hearer: Both gentlemen agree to submit the case on the record today?
Mr. Dimon: Yes."

Since the parties agreed to submit the case to the Director on the "record today," they would seem thereby to have waived any contention that a report should be added to that record. However Mrs. Christy's counsel protests this construction vigorously, and we need not press it.

It can hardly be denied that it is most desirable that he who hears should either decide or at least report. Otherwise, that important matter, designated demeanor evidence, is wholly eliminated from the case. The Division assures us it has under consideration the promulgation of remedial regulations on the matter.

█ But, however desirable such a report would be, it cannot be held essential to the validity of the decision, provided the parties are given a fair opportunity (as they have been here) not only to know what claims are being

presented to the Director, but also to contest them. The cases are set out in *Mazza v. Cavicchia,* 15 *N. J.* 498, 517, 518 (1954), and it is quite unnecessary to repeat them here.

The former Supreme Court heard a variety of matters on depositions taken before commissioners or examiners without any report. *R. S.* 2:27–228 *et seq., Supreme Court Rules* 191 to 195 *et seq.,* 16 *N. J. Misc.* 871. Note the like practice as to examiners in Chancery prior to *L.* 1871, *p.* 127, *Chancery Rules* 64–84, *Nixon's Digest* 1099 (1868), and under certain circumstances thereafter, *Chancery Rules* 93 *et seq.,* 1 *N. J. Misc.* 760, 16 *N. J. Misc* 603. Surely there was no lack of due process then.

The fourth contention is without merit.

Affirmed.