JULES INCORPORATED, *A Corporation,*

d/b/a THE OUTHOUSE INN

*v.*

PATRICK B. BOGGS, *Commissioner, etc.,*

JIM L. AYERS, *Successor of Patrick B. Boggs,*

*Commissioner, Alcohol Beverage Control Commission,*

*State of West Virginia*

(No. 14172)

Decided September 23, 1980.
Rehearing Denied November 19, 1980.

*Chauncey H. Browning,* Attorney General, *Gene Hal Williams,* Deputy Attorney General, for appellants.

*Arthur T. Ciccarello* for appellee.

McGRAW, JUSTICE:

In this appeal from a final order of the Circuit Court of Kanawha County, appellant, Jim L. Ayers, the Commissioner of the Alcohol Beverage Control Commission of the State of West Virginia, alleges that the trial court erred in ordering the appellant to issue a private club license to the appellee, Jules Inc., a corporation, d/b/a The Outhouse Inn. The appellant contends that he is empowered to impute to Jules, Inc. the reputation of Jules Solsky, the corporation's sole stockholder, in deter-

mining whether a license to operate The Outhouse Inn as a private club should be granted. We agree with the Commissioner.

In January of 1977 the appellee submitted a license application to the ABC Commission to operate The Outhouse Inn as a private club pursuant to W. Va. *Code* § 60-7-4 (1977). By administrative order of February 18, 1977, the appellee's license application was denied because "[a]pplication [is] not in compliance with Chapter 60, Article 7, Section 5, of the West Virginia Code. Not of good reputation."

The appellee requested a hearing to challenge the ABC Commission's determination. A hearing was held on March 24, 1977. The record of that proceeding has not been filed with this Court but from the briefs it appears three witnesses testified at the hearing as to the reputation of Jules Solsky. The State offered the testimony of a police officer for the City of Charleston and the Director of Public Safety of the City of Charleston, to show their involvement in enjoining Jules Solsky and Executive Towers, Inc. from operating a business as a nuisance.[1] The briefs do not reveal whether any evidence was introduced at the hearing as to the good reputation of Jules, Inc. or the good reputation of Jules Solsky.

The opinion of the Hearing Examiner upholding the ABC Commission's denial was issued on April 29, 1977. In his findings of fact the Hearing Examiner recited the stipulations agreed to by both parties. He also detailed the injunction proceedings against Jules Solsky and Executive Towers, Inc. In his conclusions of law the Hearing Examiner found that, based on the State's evidence, Jules Solsky was "not [of] good reputation" and that W.Va. *Code*, §§ 60-7-4(a) (1977) and 60-7-5 (Supp. 1980)

---

[1] At the hearing the following facts were stipulated to: (1) Jules Solsky is the sole stockholder of Jules, Inc.; (2) Jules Solsky was one of two stockholders in Executive Towers, Inc.; and, (3) Executive Towers, Inc. owned and operated Executive Towers Spa and Geisha girl Massage in Charleston, W.Va.

gives the ABC Commission authority to inquire into the reputation of the prospective owners of a potential private club and impute their individual reputations to the corporate reputation in determining whether to grant a license. Based on the Hearing Examiner's recommendation the ABC Commissioner denied the license application of Jules, Inc. to operate The Outhouse Inn as a private club.

On May 12, 1977, Jules, Inc. appealed the order of the ABC Commissioner to the Circuit Court of Kanawha County pursuant to the West Virginia Administrative Procedures Act, W.Va. *Code*, § 29A-5-1 *et seq.* (1980). The matter was submitted on briefs. The circuit court upheld the ABC Commissioner's findings of fact as clearly right, but reversed the conclusions of law as clearly wrong. The lower court held that the appellant could not refuse to issue a private club license to Jules, Inc. on the ground that its sole stockholder had a bad reputation. The court found that the only inquiry to be made under Chapter 60, Article 7 of the West Virginia Code was whether the corporate applicant was of good character. Because there had been no showing of the bad character of Jules, Inc., the circuit court ordered the ABC Commissioner to issue Jules, Inc. a license to operate The Outhouse Inn as a private club and refused to grant a stay pending appeal. From the order of the circuit court the ABC Commissioner appeals.

The only issue we have been asked to consider on appeal is whether the ABC Commissioner can impute the reputation of an individual stockholder to a corporation in determining whether a private club license should be issued. We have not considered the question of what evidence would be substantial enough to show that an individual or a corporation was "not [of] good reputation" because neither party has challenged the Hearing Examiner's conclusion on that issue. The appellee, not having briefed or argued the errors upon which he relied in his appeal from the ABC Commissioner's order to

the Kanawha County Circuit Court, appears to have abandoned them.[2]

The appellee contends that the circuit court was correct in concluding that W.Va. *Code,* § 60-7-1 *et seq.* (1977) limits the ABC Commissioner's inquiry to the reputation of the corporate applicant. We find this argument much too constrained in view of the elaborate private club licensing scheme created by the legislature. The law in West Virginia has always been that statutes promulgated as a general system of law, not inconsistent with one another, will be read in pari materia to give full force to the legislative intent. *State ex rel. Miller v. Locke,* 162 W.Va. 946, 253 S.E.2d 540 (1979). Therefore, an examination of the entire licensing scheme and the public policy behind this scheme is necessary to reach a more accurate picture of what the legislature intended.

The West Virginia Constitution specifically delegates to the legislature the power to "regulate the manufacture and sale of intoxicating liquors within the limits of this State, and any law authorizing the sale of such liquors shall forbid and penalize the consumption and the sale thereof for consumption in a saloon or other

---

[2] The following errors were raised by the appellee in his appeal from the ABC Commission to the Kanawha County Circuit Court:

a. That the only basis for refusal was "not good reputation" and this does not advise petitioner what is not of good reputation and who is not of good reputation and therefore fails to comply with the requirements of Chapter 60, Article 7, Section 5 of the Code of West Virginia.

b. That the Commissioner fails to state upon what basis he arrived at the conclusion "not of good reputation" and therefore fails to comply with the same Chapter and Section of the Code.

c. That the requirements for the petitioner to justify the issuance of a license and not requiring the Commissioner to justify his denial is a violation of petitioner's due process rights as guaranteed by the Constitution of the State of West Virginia.

d. Petitioner alleges that it is of good reputation and its reputation has never been questioned. Further that it was duly chartered by a Certificate of Incorporation on the 28th day of December, 1976 and was never open for business and therefore could not have any reputation other than that of being a good one.

public places." W.Va. Const. Art. 6, Section 46.[3] To control the manner and circumstance of liquor distribution in West Virginia the legislature created the Alcohol Beverage Control Commission. W.Va. *Code*, § 60-2-1 (1977). The ABC Commission has many duties including the licensing of private clubs to distribute liquor.[4]

---

[3] The Twenty-First Amendment to the United States Constitution grants a state additional authority to regulate intoxicating liquors. Section two of the amendment which reads, ". . . the transportation or importation into any State, Territory, or possession of the United States for delivery or use therein of intoxicating liquors, in violation of the laws thereof, is hereby prohibited," has been found to give a state broad powers beyond the normal police powers to regulate intoxicating liquors. *Ziffrin, Inc. v. Reeves*, 308 U.S. 132, 60 S.Ct. 163, 84 L.Ed. 128 (1939); *California v. LaRue*, 409 U.S. 109, 93 S.Ct. 390, 34 L.Ed.2d 342 (1972); *California Retail Liquor Dealers Ass'n v. Midcal Aluminum, Inc., et al.*, 445 U.S. 97, 100 S.Ct. 937, 63 L.Ed.2d 233 (1980).

[4] W.Va. *Code*, § 60-7-2(a) (Supp. 1980) defines "Private club" to mean:

Any corporation or unincorporated association which either (1) belongs to or is affiliated with a nationally recognized fraternal or veterans organization, which is operated exclusively for the benefit of its members, which pays no part of its income to its shareholders or individual member, which owns or leases a building or other premises, to which club are admitted only duly elected or approved dues paying members in good standing of such corporation or association and their guests while in the company of a member and to which club the general public is not admitted, and which club maintains in said building or on said premises a suitable kitchen and dining facility with related equipment for serving food to members and their guests, or (2) is a nonprofit social club, which is operated exclusively for the benefit of its members, which owns or leases a building or other premises, to which club are admitted only duly elected or approved dues paying members in good standing of such corporation or association and their guests while in the company of a member and to which club the general public is not admitted, and which club maintains in said building or on said premises a suitable kitchen and dining facility with related equipment for serving food to members and their guests, or, (3) is organized and operated for legitimate purposes, which has at least one hundred duly elected or approved dues paying members in good standing, which owns or leases a building or other premises, including any vessel licensed or approved by any federal agency to carry or accommodate pas-

The first step in obtaining a license from the ABC Commission to operate a private club is the submission of an application as provided for in W.Va. *Code*, § 60-7-4(a) (1977).[5] Once the application has been received the ABC Commissioner "shall conduct an investigation to determine the accuracy of the matters contained in such

sengers on navigable waters of this State, to which club are admitted only duly elected or approved dues paying members in good standing of such corporation or association and their guests while in the company of a member and to which club the general public is not admitted, and which club maintains in said building or on said premises a suitable kitchen and dining facility with related equipment and employs a sufficient number of persons for serving meals to members and their guests, or (4) is organized for legitimate purposes and owns or leases a building or other limited premises in any state, county or municipal park or at any airport, in which building or premises a club has been established, to which club are admitted only duly elected and approved dues paying members in good standing and their guests while in the company of a member and to which club the general public is not admitted, and which maintains in connection with said club a suitable kitchen and dining facility and related equipment and employs a sufficient number of persons for serving meals in said club to said members and their guests.

[5] The following information must be included in every license application for a private club:

(1) The name of the applicant;

(2) If such applicant be an unincorporated association, the names and addresses of the members of its governing board;

(3) If such applicant be a corporation, the names and addresses of its officers and directors;

(4) The place at which such applicant will conduct its operations and whether the same is owned or leased by the applicant;

(5) The number of members of the applicant;

(6) The name or names of any national organizations with which applicant is affiliated and the nature of such affiliation;

(7) The size and nature of the dining and kitchen facilities operated by applicant; and

(8) Such other information as the commissioner may reasonably require which shall include, but not be limited to, the criminal records, if any, of each member of the applicant's governing board and/or its officers and directors who have been convicted of a felony or a crime involving moral turpitude. W.Va. *Code*, § 60-7-4(a) (1977).

application and whether applicant is a bona fide private club of good reputation in the community in which it shall operate." W.Va. *Code* § 60-7-5(a) (Supp. 1980).

The investigation by the ABC Commissioner must be completed within thirty days of the submission of the application. Based on the investigation the Commissioner must then decide whether to grant or deny a license and enter an order accordingly. Should the Commissioner deny the license application, a hearing can be requested to challenge the Commissioner's order. W.Va. *Code* § 60-7-13(d) (1977). If the application is again denied, an appeal can be made to the Circuit Court of Kanawha County pursuant to W. Va. *Code* § 29-5-1 *et seq.* (1980).

When W. Va. *Code* § 60-7-5 (Supp. 1980) is read in pari materia with W. Va. *Code* § 60-7-4(a) (1977), it is clear that the legislature intended the ABC Commissioner to investigate into the background of the corporate applicant. The legislature specifically requires the ABC Commissioner to make any reasonable inquiries about the corporate applicant and to investigate any felony convictions or convictions for crimes involving moral turpitude by the directors and officers of the corporation. W. Va. *Code* § 60-7-4(a) (1977). When one considers the many prohibited acts attendant to operating a private club, it is evident that the legislature intended to minimize infractions at private clubs by restricting those who may apply for a license.[6] The Kanawha County Circuit Court

---

[6] W.Va. *Code* § 60-7-12 (1977) currently provides the following prohibited acts:

(a) It shall be unlawful for any licensee, or agent, employee or member thereof, on such licensee's premises to:

(1) Sell or offer for sale any alcoholic liquors other than from the original package or container;

(2) Authorize or permit any disturbance of the peace; obscene, lewd, immoral or improper entertainment, conduct or practice; gambling or any slot machine, multiple coin console machine, multiple coin console slot machine or device in the nature of a slot machine;

(3) Sell, give away, or permit the sale of, gift to, or the procurement of any alcoholic liquors, for any minor, mental incom-

did not consider the legislative intent when it narrowly read W.Va. *Code*, § 60-7-1 *et seq.* (1977) to allow the ABC Commissioner to consider only the reputation of the corporation in deciding whether to grant a private club license. We find that reading of the licensing statutes much too restrictive in view of the intent of the legislature to diminish the likelihood of the commission of prohibited acts by licensees. This can only be achieved by allowing the ABC Commissioner to inquire into the reputation of the corporate officers and stockholders and impute that reputation to the corporate applicant.

Should this Court hold, as the appellee suggests, that a corporate reputation exists independent of the officers and stockholders, the legislative objective of controlling the manner and circumstances of distributing intoxicating liquors by denying licenses to applicants "not [of] good character" would be circumvented. If we look only

petent, or person who is physical incapacitated due to the consumption of alcoholic liquor, or the use of drugs;

(4) Sell, give or dispense alcoholic liquors in or on any licensed premises or in any rooms directly connected therewith, between the hours of three o'clock a.m. and one o'clock p.m. on any Sunday;

(5) Permit the consumption by, or serve to, on the licensed premises any alcoholic liquors, covered by this article, to any person under the age of eighteen years;

(6) With the intent to defraud, alter, change or misrepresent the quality, quantity or brand name of any alcoholic liquors;

(7) Sell or offer for sale any alcoholic liquors to any person who is not a duly elected or approved dues paying member in good standing of said private club or a guest of such member; or

(8) Violate any reasonable rule or regulation of the commissioner.

(b) It shall further be unlawful for any licensee to advertise in any news media or other means, outside of the licensee's premises, the fact that alcoholic liquors may be purchased thereat.

(c) Any person who violates any of the foregoing provisions shall be guilty of a misdemeanor, and, upon conviction thereof, shall be punished by a fine of not less than one hundred dollars nor more than five hundred dollars or by imprisonment in the county jail for a period not to exceed one year, or by both fine and imprisonment.

to the corporate reputation, individuals operating a private club could disincorporate once they earned a "bad reputation", incorporate a new company with no reputation and get a new private club license. This Court does not believe the legislature intended individuals to be able to frustrate the private club licensing scheme so easily. Therefore, we hold that W.Va. Code §§ 60-7-4(a) (1977) and 60-7-5 (Supp. 1980) when read in pari materia, empowers the ABC Commissioner to inquire into the reputation of the corporate owners of a potential private club and to impute their individual reputations to the corporation in determining whether to grant a license.

The appellee's argument also gives this Court an opportunity to analyze the very nature of the corporate entity. The appellee would have us view the corporate entity as some disembodied spirit with an autonomous existence. The Court views the corporate entity more as a matter of convenience, a legal fiction. The corporate entity does not exist separate from its board of directors, its officers and its stockholders, for they are the ones who formulate the actions of the corporation. Their actions will earn the corporation its good or bad reputation.

This principle, that the corporation is nothing more than the sum of its parts, was recognized early on in *United States v. Milwaukee Refrigerator Transit Co.*, 142 F. 247 (E.D. Wis. 1905). In that case the court announced:

> a corporation will be looked upon as a legal entity as a general rule, ... but, when the notion of legal entity is used to defeat public convenience, justify wrong, protect fraud or defend crime, the law will regard the corporation as an association of persons. 142 F. at 255 (1905).

That principle continues to be recognized as the United States Supreme Court has recently stated:

> [a]lthough a corporation and its shareholders are deemed separate entities for most purposes, the corporate form may be disregarded in the

interests of justice where it is used to defeat an overriding public policy. *New Colonial Ice Co. v. Helvering*, 292 U.S. 435, 442, 78 L.Ed. 1348 54 S.Ct. 788, (1934); *Chicago, M. & St.P.R. Co. v. Minneapolis Civic Anns.*, 247 U.S. 490, 501, 62 L.Ed. 1229, 38 S.Ct. 553 (1918). In such cases, courts of equity, piercing all fictions and disguises, will deal with the substance of the action and not blindly adhere to the corporate form. *Bangor Runta Operations v. Bangor 7 A.R. Co.*, 417 U.S. 703 at 713, 94 S.Ct. 2578 at 2584, 41 L.Ed.2d 418 at 427, (1974).

Therefore, this Court recognizes that in the interests of justice the corporate entity must be disregarded at times, the corporate veil must be pierced. The corporate form can not be allowed to extend the principle of incorporation beyond its legitimate purpose and thereby produce injustice. *DeWitt Truck Brokers v. W. Ray Fleeming Fruit Co.*, 540 F.2d 681 (4th Cir. 1976). The ABC Commissioner was entirely correct in disregarding the entity, Jules, Inc., and in considering the reputation of Jules Solsky to determine whether a private club license should be issued. To allow otherwise would enable an entity created by state action to subvert a state policy that only those applicants of good reputation should have a private club license.[7]

Many courts have also recognized the need to disregard the corporate entity in the area of administrative law. In those cases the courts recognize that a regulatory commission can look beyond the corporate entity to prevent the frustration of a statutory purpose. *Capital Telephone Company, Inc. v. F.C.C.*, 498 F.2d 734 (D.C.Cir. 1974); *General Telephone Co. v. United States*, 449 F.2d 846 (5th Cir. 1971). *See also Schenley Distillers Corp. v.*

---

[7] For a thorough analysis of piercing the corporate entity to prevent the avoidance of statutes in other areas *see, Efficacy of the Corporate Entity in Evasion of Statutes* 26 Iowa L.Rev. 350 (1941) This article notes that the theory behind many piercing the corporate veil cases "is that there can be no immunity granted to a creation of the state which will permit it to evade the policies established by its creator." 26 Iowa L.Rev. at 351 (1941).

*United States* 326 U.S. 432, 66 S.Ct. 247, 90 L.Ed 181 (1946). Here the ABC Commissioner disregarded the corporate entity of Jules, Inc. and looked to the reputation of Jules Solsky in order to prevent the circumvention of the legislative intent by the corporate entity. The trial court should have allowed the ABC Commissioner to disregard the corporate entity because the interests of justice and public policy dictate that applicants "not [of] good reputation" should not be able to operate private clubs.

Finally, this Court has reviewed several decisions by other courts in the area of liquor licensure. In one recent case a New Jersey corporation was applying for a license to transport liquor. The licensing agency denied the permit after they investigated the corporation and determined that it was a "front" for an individual who had recently been convicted of two crimes involving moral turpitude and was therefore ineligible for a license. The court found sufficient evidence to support the finding by the state agency that the corporation was a "front" and it was therefore proper to deny the license. *Matter of S. Schmidt & Sons, Inc.*, 79 N.J. 344, 399 A.2d 637 (1979). In another case the Appeals Court of Massachusetts, recognizing the heavily regulated nature of the liquor industry, upheld the Massachusetts ABC Commissions's denial of a liquor license renewal where the applicant had failed to disclose the true owner of the establishment. *Number Three Lounge, Inc. v. Alcoholic Beverage Control Commission*, 7 Mass.App ——, 387 N.E.2d 181 (1979). The Massachusetts ABC Commissioner denied the liquor license renewal after investigating the lounge and determining that the real owner of the stock was not the individual applying for the license but his father-in-law who had previously been refused a license.

In other jurisdictions state agencies have denied licenses to serve liquor where one family member is applying because another family member has been convicted of a crime and therefore become ineligible to have a

license. *Wilks v. Liquor Control Commission,* 122 Conn. 443, 190 A. 262 (1937), *Mississippi State Tax Commissioner v. Moore,* 209 So.2d 832 (Miss. 1968); *State ex rel. Bismark Grill v. Keirnan,* 238 Mo.App. 507, 181 S.W.2d 798 (1944); *Florence Methodist Church v. Township Committee,* 38 N.J.Super. 85, 118 A.2d 86 (App. Div. 1955). *See also* Annot. 153 A.L.R. 836. In all of these cases the state agency did not hesitate to disregard the corporate entity in deciding whether to grant a liquor license.

In summary, we conclude that the circuit court committed error when it did not read W. Va. *Code* §§ 60-7-4(a) (1977) and 60-7-5 (Supp. 1980) in pari materia to allow the ABC Commissioner to consider the reputation of Jules Solsky in deciding whether to grant a private club license. The ABC Commissioner was correct in considering the reputation of Jules Solsky in determining whether to issue Jules, Inc. a license to operate a private club. Accordingly, we reverse the ruling of the Circuit Court of Kanawha County and reinstate the order of the ABC Commissioner denying a private club license to Jules, Inc. In view of our holding it is not necessary to address definitively the second issue raised by the appellant, that the circuit court erred in directing the ABC Commissioner to issue a private club license to the appellee instead of remanding the case for further proceedings.[8]

*Reversed.*

---

[8] We do note that *Code* 29A-5-4(g) (1980) does give a circuit court the jurisdiction to "reverse, vacate or modify the order or decision of the agency if the substantial rights of the petitioner or petitioners have been prejudiced."