STATE *ex rel.* MARTIN LEE MILLER, SR., *et al.*

*v.*

HON. KERMIT A. LOCKE, *Circuit Judge, et al.*

(No. 14267)

Decided April 10, 1979.

*Daniel F. Hedges* for relators.

*Chauncey H. Browning*, Attorney General, *Richard L. Withers*, Special Assistant Attorney General, for respondents.

PER CURIAM:

In this habeas corpus proceeding the relators challenge the constitutionality of W.Va. Code, 49-6-3, the emergency taking provision of the West Virginia Child

Welfare Act. After carefully considering the arguments of counsel, we conclude that the statute is constitutional on its face.

On June 15, 1978, respondent, Judge Locke, ordered that custody of infant Elvis Jay Miller be temporarily transferred from the relators, his natural parents, to the West Virginia Department of Welfare. The judge's order, entered pursuant to the provisions of W.Va. Code, 49-6-3, authorized the transfer even though the relators had been given no notice of the action and even though they had been afforded no opportunity to be heard.

*W.Va. Code,* 49-6-3, provides, in part:

> "(a) Upon the filing of a petition, the court may order that the child be delivered for not more than ten days into the custody of the state department or a responsible relative, pending a preliminary hearing, if it finds that: (1) There exists imminent danger to the physical well-being of the child, and (2) there are no reasonably available alternatives to removal of the child, including, but not limited to, the provision of medical, psychiatric, psychological or homemaking services in the child's present custody....

> (b) Whether or not the court orders immediate transfer of custody as provided in subsection (a) of this section, if the facts alleged in the petition demonstrate to the court that there exists imminent danger to the child, the court may schedule a preliminary hearing giving the respondents at least five days' actual notice...."

It is well established in West Virginia that statutes which are not inconsistent with one another, and which relate to the same subject matter, are *in pari materia.* Statutes *in pari materia* should be read and construed together, the primary purpose being to ascertain the intention of the Legislature. *State ex rel. Slatton v. Boles,* 147 W.Va. 674, 130 S.E.2d 192 (1963); *State ex rel, Graney v. Sims,* 144 W.Va. 72, 105 S.E.2d 886 (1958); *State v. Hoult,* 113 W.Va. 587, 169 S.E. 241 (1933). Clearly *W.Va. Code,* 49-6-3, and the other sections of Article 6, Chapter

49 of the West Virginia Code are not inconsistent and relate to the same subject matter. They should, therefore, be read *in pari materia.*

## I

It is clear that the right of a natural parent to raise his children is a fundamental right guaranteed by the due process clauses of the United States and West Virginia Constitutions. Due process prohibits a court or other arm of the State from terminating the parental rights of a natural parent having legal custody of his child without notice and the opportunity to be heard. *See, Stanley v. Illinois,* 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972); *In re Willis,* ____ W.Va. ____, 207 S.E.2d 129 (1974).

Coexistent with the right of a natural parent to due process in matters concerning the custody of his children is the inherent power of the State to intervene to protect the person and property of an infant. This power devolves upon the State under the doctrine of *parens patria. See, State ex rel. Slatton v. Boles, supra.*

In reconciling the right of the parent to custody of his child with the power of the State to intervene to protect the .child, we have noted that emergency situations can arise which demand that the State, as *parens patria,* move immediately without regard to the rights and sensibilities of the parents in order to protect the health, welfare or life of the child. However, we have held that any taking and holding of a child from the custody of his natural parents by the State is an unwarranted and unjustified intrusion into the family relationship if it continues beyond any period necessary to serve the legitimate interests of the State. The unreasonable holding of the child away from his family and in disregard of their rights, without adjudication of those rights, offends due process. *In re Willis, supra.*

In *Willis* we established the parameters of reasonableness within which an emergency-taking statute must

fall in order to satisfy due process requirements. Those parameters are:

1. The statute providing for emergency-taking must allow such taking only in an emergency situation in which the welfare or the life of the child is endangered; and

2. The statute must provide that there be an adjudication of the issues involved as soon as is reasonably possible after the taking. Such adjudication necessarily entails giving notice to the parents and offering them a meaningful opportunity to be heard.

*W.Va. Code*, 49-6-3(a) empowers a circuit court to order emergency-taking only after the court has found (1) that there exists an imminent danger to the physical well-being of the child; and (2) that there are no reasonably available alternatives to removal of the child, including, but not limited to, the provision of medical, psychological, or homemaking services to eliminate the danger and permit the child to remain in his current custody.

Because of these restrictions upon the authority of the court to exercise the emergency-taking power, *W.Va. Code*, 49-6-3(a), clearly falls within the first parameter set by *Willis*.

Further, *W.Va. Code*, 49-6-3(a), when read *in pari materia* with *W.Va. Code*, 49-6-3(b), provides that a child may not be withheld from the custody of his parents under an emergency-taking order for more than ten days unless the court conduct a preliminary hearing within the first ten days after the taking. *W.Va. Code*, 49-6-3(b), requires that the child's parents be given notice of any preliminary hearing conducted within those ten days, and the same statute, when read *in pari materia* with *W.Va. Code*, 49-6-2, requires that the parents be given a meaningful opportunity to be heard at such preliminary hearing.

*W.Va. Code*, 49-6-3, *in pari materia* with the other sections of the West Virginia Child Welfare Act, allows a child to be taken for no more than ten days unless the

child's parents have been given notice and afforded a meaningful opportunity to be heard. In view of practical problems often encountered in locating parents, in preparing process, and in having process served, and in view of the desirability of affording the parents a reasonable time to prepare for a meaningful hearing, the scheme devised by the Legislature and incorporated in *W.Va. Code*, 49-6-3, falls within the second requirement of *Willis* in that it provides for an adjudication of the issues involved as soon as is reasonably possible after the taking. Because *W.Va. Code*, 49-6-3, clearly meets the requirements of *Willis*, we hold that it is constitutional on its face.

## II

A statute may be constitutional as written, yet be unconstitutionally applied in a given case. *Hart v. Coiner*, 483 F.2d 136 (4th Cir. 1973), *cert. denied* 415 U.S. 983, 94 S.Ct. 1577, 39 L.Ed.2d 881 (1974).

The relators urge that we hold that the courts of West Virginia have systematically applied *W.Va. Code*, 49-6-3 unconstitutionally. That we decline to do because whether a statute is unconstitutionally applied depends upon the particular facts of each case. *See, Hart v. Coiner, supra.*

We do note that in the case before us Elvis Jay Miller was returned to the custody of the relators before the case was argued in this Court.

Because the only issue for determination in a habeas corpus proceeding involving the right of parents to custody of their child is the proper custody of the child, *Pugh v. Pugh*, 133 W.Va. 501, 56 S.E.2d 901 (1949), and because custody of Elvis Jay Miller was restored to the relators before argument in this case, we conclude that the issue of custody is moot.

The Writ of Habeas Corpus heretofore issued is hereby discharged.

*Writ discharged.*