672 S.E.2d 345

**Teresa ESTEP and Terry Estep, Her Husband, Plaintiffs Below, Appellees**

v.

**MIKE FERRELL FORD LINCOLN–MERCURY, INC., A West Virginia Corporation, and Ford Motor Company, A Foreign Corporation Doing Business in West Virginia, Defendants Below, Appellants.**

No. 33810.

Supreme Court of Appeals of West Virginia.

Submitted Oct. 7, 2008.

Decided Dec. 10, 2008.

Dissenting Opinion of Justice Benjamin Jan. 9, 2009.

Michael Bonasso, Susan Wong Romaine, Robert P. Lorea, Flaherty, Sensabaugh & Bonasso, P.L.L.C., Charleston, Craig A. Morgan, Law Office of Craig A. Morgan, Austin, TX, Pro Hac Vice, Counsel for the Appellants.

Guy R. Bucci, Stacy A. Jacques, Bucci, Bailey & Javins, L.C., Charleston, Pamela Lambert, Gilbert, Counsel for the Appellee.

McHUGH, Senior Status Justice:[1]

Ford Motor Company (hereinafter "Ford") appeals the March 14, 2007, order of the Circuit Court of McDowell County denying Ford's motion for judgment as a matter of law or a new trial in a product liability case.[2] The motion was made after a jury found against Ford in a lawsuit brought by Teresa Estep (hereinafter "Ms. Estep") and Terry Estep alleging that their 1999 Ford Ranger was defective because the vehicle's air bags failed to deploy and protect Ms. Estep during a single vehicle crash.[3] Ms. Estep was alone in the vehicle and was not wearing a safety belt at the time of the crash.

Ford maintains that the lower court erred by: (1) not permitting Ford to introduce any safety belt evidence at trial; (2) not granting judgment as a matter of law when Ms. Estep failed to prove that the vehicle was defective under the standards established by West Virginia law; (3) allowing Ms. Estep's experts to present evidence based entirely upon speculation and conjecture; and (4) incorrectly instructing the jury regarding compliance with federal standards raising a rebuttable presumption.

Having completed our careful examination of the record, and concluded our study of both oral and written arguments of counsel in light of the governing legal precepts, we affirm the decision of the circuit court.

## I. Factual and Procedural Background

This case involves a single car accident in which Ms. Estep lost control of her Ford Ranger while driving alone. The accident occurred on October 5, 2000, near Panther, West Virginia, when the Ranger lost traction over an oil slick on the road. The vehicle went over an embankment, traveled 30 feet

---

1. Pursuant to an administrative order entered on September 11, 2008, the Honorable Thomas E. McHugh, Senior Status Justice, was assigned to sit as a member of the Supreme Court of Appeals of West Virginia commencing September 12, 2008, and continuing until the Chief Justice determines that assistance is no longer necessary, in light of the illness of Justice Joseph P. Albright.

2. Claims involving negligence and breach of warranty were dismissed at trial.

3. The suit was originally filed by Teresa Estep and her former husband Terry Estep, but the

former spouse is not directly involved in this appeal since his claim for damages for loss of consortium was expressly rejected by the jury. The defendants named in the Estep complaint were both Ford Motor Company and the local car dealer, Mike Ferrell Ford–Lincoln Mercury, Inc. It was explained by Ford during oral argument that since the case was a pure product liability case there was no need for the dealer to participate after the Esteps' claims sounding in negligence and breach of warranty were dismissed at trial.

down a wooded hillside while crashing into a tree during the descent, and came to rest in the Tug Fork River. The air bag on the driver's side of the vehicle failed to deploy during the accident, and Ms. Estep sustained serious back injuries that required extensive surgery to repair.

The Estep complaint was filed on October 4, 2002. By order entered on January 27, 2006, the lower court granted the Esteps' motion in limine to exclude safety belt evidence from presentation at trial based upon the provisions of West Virginia Code 17C–15–49 (1993) (Repl.Vol.2004).[4]

The case proceeded to trial before a jury of six persons on November 13, 2006. During the week long trial, the jury heard testimony from witnesses for both Ford and Ms. Estep, including expert witnesses from both sides. Based upon the testimony of the experts in the record, whether an air bag deploys depends upon the type of collision involved. Ford produced evidence representing that the vehicle left the roadway, became airborne while proceeding over an embankment, struck and spun around a tree while descending through the air and forcefully landed on all four wheels in the riverbed. Ms. Estep presented evidence that the vehicle slid off the roadway, rolled down an embankment without becoming airborne where it squarely hit a two-foot wide tree, pivoted after colliding with the tree and then proceeded down the embankment until it gently landed in the riverbed. The significance of the type of crash and how the car descended the embankment related to the proximate cause of Ms. Estep's back injuries. Ford maintained that Ms. Estep's back was injured when the car landed on all four wheels in the riverbed; Ms. Estep maintained that her injury occurred as a result of her body being thrown forward over the steering wheel when the Ranger struck the tree.

The jury weighed the evidence and returned a verdict for Ms. Estep. The trial court entered judgment on the verdict in favor of Ms. Estep in the amount of $993,157.50. Thereafter, Ford filed a motion for judgment as a matter of law or a new trial. On March 14, 2007, the trial court entered an order denying the post-trial motion. From that order, Ford petitioned for appeal; this Court granted review on January 10, 2008.

## II. Standard of Review

In this appeal, we are asked to review the lower court's denial of a post-verdict motion for judgment as a matter of law and the alternative motion for a new trial. The standard of review applied under either circumstance is settled.

A post-trial motion for judgment as a matter of law was formerly called a motion notwithstanding the verdict. We previously observed that while the terminology changed when Rule 50 of the West Virginia Rules of Civil Procedure was amended in 1998, the standard of review of rulings regarding this motion was unaffected. *Barefoot v. Sundale Nursing Home,* 193 W.Va. 475, 482 n. 7, 457 S.E.2d 152, 159 n. 7 (1995). As a result, in syllabus point five of *Smith v. First Community Bancshares, Inc.,* 212 W.Va. 809, 575 S.E.2d 419 (2002), we modified the terminology used in syllabus point three of *Brannon v. Riffle,* 197 W.Va. 97, 475 S.E.2d 97 (1996), to read as follows:

> The appellate standard of review for the granting of a motion for a [judgment as a matter of law] pursuant to Rule 50 of the West Virginia Rules of Civil Procedure is de novo. On appeal, this court, after considering the evidence in the light most favorable to the nonmovant party, will sustain the granting of a [judgment as a matter of law] when only one reasonable conclusion as to the verdict can be reached. But if reasonable minds could differ as to the importance and sufficiency of the evidence, a circuit court's ruling granting a [judgment as a matter of law] will be reversed.

The case before us involves a review of the denial of a motion for judgment as a matter of law. In *Gillingham v. Stephenson,* 209

**4.** Ms. Estep stipulated to a five percent reduction in medical expenses in order to preclude the introduction of evidence of her not wearing a safety belt at the time of the accident pursuant to West Virginia Code § 17C–15–49(d). The text of the statute is set forth at p. 7 *infra.*

W.Va. 741, 551 S.E.2d 663 (2001), in reliance on the above-quoted syllabus point we concluded that this Court "will sustain the … denial of a … post-verdict motion for judgment as a matter of law when only one reasonable conclusion to the verdict can be reached." *Id.* at 745, 551 S.E.2d at 667.

■ As to our review of the denial the motion for a new trial, syllabus point four of *Sanders v. Georgia–Pacific Corporation,* 159 W.Va. 621, 225 S.E.2d 218 (1976), directs that "the ruling of a trial court in granting or denying a motion for a new trial is entitled to great respect and weight, [and] the trial court's ruling will be reversed on appeal [only] when it is clear that the trial court has acted under some misapprehension of the law or the evidence." We elaborated on our review standards involving a lower court's ruling on a motion for a new trial in *Tennant v. Marion Health Care Foundation,* Inc., 194 W.Va. 97, 459 S.E.2d 374 (1995), as follows: "We review the rulings of the circuit court concerning a new trial and its conclusion as to the existence of reversible error under an abuse of discretion standard, … the circuit court's underlying factual findings under a clearly erroneous standard [and][q]uestions of law … [under] a de novo" standard. *Id.* at 104, 459 S.E.2d at 381.

Any other standards which apply to particular issues raised in this appeal will be set forth in our discussion of the pertinent issue.

### III. Discussion

As noted earlier, Ford points to four errors made by the lower court in this case. The legal basis for Ford's assertions include: (1) by concluding that safety belt evidence was not admissible under the provisions of the safety belt law, the lower court incorrectly interpreted the safety belt statute and/or allowed the statute to be applied in a way that violated Ford's due process rights; (2) there was insufficient evidence to support Ms. Estep's product liability claim under West Virginia law; (3) Ms. Estep's expert testimony lacked proper foundation and was based entirely upon speculation and conjecture; and (4) the jury was improperly instructed regarding the legal effect of a manufacturer complying with federal standards. We will address each issue in turn.

### A. Safety Belt Evidence

■ The first issue raised by Ford in this appeal is the lower court's refusal to allow use of safety belt evidence at trial. Central to the trial court's ruling in this regard is the safety belt statute set forth in West Virginia Code § 17C–15–49. In addition to requiring that all occupants of vehicles on public highways wear safety belts, this statute contains a provision limiting when and for what purpose evidence of violations of the safety belt law is admissible in court. In this latter regard, the statute provides as follows:

(d) A violation of this section is not admissible as evidence of negligence or contributory negligence or comparative negligence in any civil action or proceeding for damages, and shall not be admissible in mitigation of damages: Provided, That the court may, upon motion of the defendant, conduct an in camera hearing to determine whether an injured party's failure to wear a safety belt was a proximate cause of the injuries complained of. Upon such a finding by the court, the court may then, in a jury trial, by special interrogatory to the jury, determine (1) that the injured party failed to wear a safety belt and (2) that the failure to wear the safety belt constituted a failure to mitigate damages. The trier of fact may reduce the injured party's recovery for medical damages by an amount not to exceed five percent thereof. In the event the plaintiff stipulates to the reduction of five percent of medical damages, the court shall make the calculations and the issue of mitigation of damages for failure to wear a safety belt shall not be presented to the jury. In all cases, the actual computation of the dollar amount reduction shall be determined by the court.

Ford's argument regarding application of the safety belt law has two elements. The first is that the lower court's reading of the statute is overly broad. Ford asserts that under the literal terms of the statute the only time evidence of a violation of the statute is inadmissible is when it is offered on the issues of negligence or mitigation of damages beyond the express limits of the statute.

Second, Ford says that applying the language of the statute so as to preclude introduction of evidence of safety belt use in a crashworthiness case is unconstitutional. Ford supports this position by arguing that where the design of an entire restraint system is called into question, a manufacturer may not be precluded from explaining to the jury how all of the various components of the restraint system were intended to work without violating due process principles.

■ A crashworthiness case involving a motor vehicle is sometimes referred to as a "secondary impact," "second collision," or "enhanced injury" case. 62A Am.Jur.2d *Products Liability* § 1020 (1997). This is because a defendant's liability is based on an alleged failure to protect the occupants of a vehicle from the *consequences* of the crash rather than liability for the crash itself. *Id.* The crashworthiness doctrine was adopted in West Virginia in *Blankenship v. General Motors Corporation,* 185 W.Va. 350, 406 S.E.2d 781 (1991). Syllabus point one of *Blankenship* addresses the "enhanced injury" premise of the doctrine in the following way:

> A complaint against the seller of a motor vehicle states a cause of action under West Virginia law if the complaint does not allege that a vehicle defect *caused* a collision, but alleges only that the injuries sustained by the occupant as a result of the collision were *enhanced* by a design defect in the vehicle.

(Emphasis in original.) Ford contends that the lower court failed to appreciate that the provisions of the safety belt statute only preclude introduction of safety belt use in order to address issues of negligence or mitigation of damages rather than the adequacy of a product's design.

The lower court's analysis of subsection (d) of West Virginia Code § 17C–15–49 is reflected in the following findings contained in

the March 14, 2007, order denying Ford's post-trial motions.

There is a two part analysis to section (d). The first part states that a violation of 17C–15–49, which is the failure to wear a seat belt, is not admissible as evidence of negligence or contributory negligence or comparative negligence in any civil action or proceeding for damages, and shall not be admissible in mitigation of damages. This language plainly relates to negligence and damages.

The second part of section (d) relates to causation. . . . [E]vidence of not wearing a seat belt is admissible for the purpose of causation, unless the injured party stipulates to the five percent (5%) reduction of medical expenses. . . .

Once the injured party stipulates to the five percent (5%) reduction, then evidence of not wearing a seat belt is not admissible. Plaintiffs stipulated to the five per cent (5%) reduction, which the Court applied to the verdict. This statute was enacted well over ten (10) years ago and this Court does not believe it is unconstitutional.

We concur generally with the lower court's reading of the statute.

The portion of the safety belt statute on which Ford focuses its argument states: "A violation of this section is not admissible as evidence of negligence or contributory negligence or comparative negligence in any civil action or proceeding for damages, and shall not be admissible in mitigation of damages[.]" W.Va.Code § 17C–15–49(d). Arguing the correctness of its interpretation of this statutory provision, Ford asks us to consider the course other courts, primarily federal, have taken in applying similar preclusive provisions of other states' laws. After examining the cases raised by both parties in support of their respective positions and the cases discovered through our independent research,[5] about the only certain conclusion

---

5. See *Jimenez v. DaimlerChrysler Corp.,* 269 F.3d 439 (4th Cir.2001) (applying South Carolina law); *DePaepe v. General Motors Corp.,* 33 F.3d 737 (7th Cir.1994) (applying Illinois law); *Barron v. Ford Motor Co. of Canada Ltd.,* 965 F.2d 195 (7th Cir.1992) (applying North Carolina common law); *Gardner v. Chrysler Corp.,* 89 F.3d 729 (10th Cir.1996) (applying Kansas law); *La-*

*Hue v. General Motors Corp.,* 716 F.Supp. 407 (W.D.Mo.1989) (applying Missouri common law); *Carrasquilla v. Mazda Motor Corp.,* 166 F.Supp.2d 181 (M.D.Pa.2001) (applying Pennsylvania law); *Milbrand v. DaimlerChrysler Corp.,* 105 F.Supp.2d 601 (E.D.Tex.2000) (applying Texas law), *Brown v. Ford Motor Co.,* 67 F.Supp.2d 581 (E.D.Va.1999) (applying Virginia law); *Gen-*

to which we can arrive is that there is a split of authority regarding the adoption of what is dubbed the safety belt defense in crashworthiness cases. *See also* 1 *Handling Motor Vehicle Accident Cases* 2d § 1A:10 (2008); 63A Am.Jur.2d *Products Liability* § 1031 (1997). Ultimately, the question boils down to statutory construction and treatment of legislative policy determinations by the courts.

Concisely stated, Ford argues that it has designed a restraint system for the safety of an occupant of its motor vehicle. Unless reference is made to a part of that "system," i.e. safety belts, Ford is unable to fully present its defense to the jury. We understand the concerns expressed by Ford. Nonetheless, we are obligated to look at the wording of the safety belt statute, which is admittedly broad. We essentially are being asked to insert the phrase "except in crashworthiness cases" into the statute in order to reach the result Ford wants.

Ford proposes that the safety belt statute does not bar admission of evidence of a person's failure to wear a safety belt except when it would be used "as evidence of negligence or contributory negligence or comparative negligence ... [or] in mitigation of damages." W.Va.Code § 17C–15–49(d). Ford maintains it did not want to offer the safety belt evidence for any of these purposes, but instead wanted to use it to refute Ms. Estep's claim that Ford did not use reasonable care in designing the 1999 Ranger to restrain occupants in a crash such as this. Although couched in different terms, Ford's intended use of the evidence nevertheless does relate to negligence and mitigation of damages. It would allow Ford to show that Ms. Estep contributed to her enhanced injury by failing to wear her safety belt, which in turn could influence the issue of mitigation of damages.[6] Without a proviso excluding crashworthiness cases, such use of this evidence is in derogation of the express terms of the safety belt statute.

■■■■ West Virginia Code § 17C–15–49 (d) does not specifically address the use of safety belt evidence in crashworthiness or design defect cases, but the phrase "in any civil action or proceeding for damages" is certainly broad enough to encompass such actions. In matters of statutory construction, " '[a] statutory provision which is clear and unambiguous and plainly expresses the legislative intent will not be interpreted by the courts but will be given full force and effect.' Syl. pt. 2, *State v. Epperly*, 135 W.Va. 877, 65 S.E.2d 488 (1951)." Syl. pt. 1, *Sowa v. Huffman*, 191 W.Va. 105, 443 S.E.2d 262 (1994). The Legislature chose not to limit the effect of this statute to cases proceeding on a theory of negligence alone as it extended the provisions regarding limitation and preclusion of safety belt evidence to all civil actions. The public policy expressed through the terms of the statute is that nonuse of safety belts may only be raised in a civil action to mitigate damages, and even that use is limited to situations where the plaintiff does not stipulate to a five percent reduction in medical damages. As to statements of public policy, this Court is not "at liberty to substitute our policy judgments for those of the Legislature." *Taylor–Hurley v. Mingo County Bd. of Ed.*, 209 W.Va. 780, 787, 551 S.E.2d 702, 709 (2001). Consequently, we hold that in a crashworthiness or enhanced injury case involving a motor vehicle, the express provisions of West Virginia Code § 17C–15–49(d) (1993) (Repl.Vol.2004)

eral *Motors Corp. v. Wolhar*, 686 A.2d 170 (Del. 1996); *Hopper v. Carey*, 716 N.E.2d 566 (Ind. App.1999); *Reed v. Chrysler Corp.*, 494 N.W.2d 224 (Iowa 1992); *Floyd v. General Motors Corp.*, 25 Kan.App.2d 71, 960 P.2d 763 (1998); *Rougeau v. Hyundai Motor America*, 805 So.2d 147 (La.2002); *Olson v. Ford Motor Co.*, 558 N.W.2d 491 (Minn.1997); *Estate of Hunter v. General Motors Corp.*, 729 So.2d 1264 (Miss.1999); *Shipler v. General Motors Corp.*, 271 Neb. 194, 710 N.W.2d 807 (2006); *Mott v. Sun Country Garden Products, Inc.*, 120 N.M. 261, 901 P.2d 192 (1995); *Swajian v. General Motors Corp.*, 559 A.2d 1041 (R.I.1989) (applying common law);

*Whitehead v. American Motors Sales Corp.*, 801 P.2d 920 (Utah 1990) (applying common law); *Ulm v. Ford Motor Co.*, 170 Vt. 281, 750 A.2d 981 (2000).

**6.** In its memorandum in opposition to Ms. Estep's motion in limine, Ford suggested a similar outcome by stating that "it would be patently unfair to deny Ford the right to produce evidence that the plaintiff would not have been as severely injured had she simply worn the seat belt that Ford provided."

limit the introduction of evidence of safety belt use in any civil action or proceeding for damages when, upon motion of the defendant, the trial court determines that failure to wear a safety belt was a proximate cause of the injuries sustained, and the trier of fact determines through use of a special interrogatory that (1) the injured party failed to wear a safety belt and (2) such omission constituted a failure to mitigate damages. Upon such findings, the trier of fact may reduce the injured party's recovery for medical damages in an amount not to exceed five percent. The statute further provides that introduction of safety belt use evidence is precluded when an injured party stipulates to a five percent reduction of medical damages.

■ We turn now to Ford's secondary argument regarding the applicability of the safety belt statute to crashworthiness cases. Although less fully developed than its first argument, Ford's claim essentially is that even if it is found that the preclusive evidentiary provision of West Virginia Code § 17C–15–49(d) is written broadly enough to include crashworthiness cases, the statute must be deemed unconstitutional as applied to such cases because it deprives manufacturers the opportunity to fully defend their positions. *See* Syl. pt. 2, *State ex rel. Miller v. Locke,* 162 W.Va. 946, 253 S.E.2d 540 (1979) ("A statute may be constitutional as written yet be unconstitutionally applied in a given case.").

■ In order for a statute "to withstand constitutional scrutiny under the substantive due process standard,[7] it must appear that the means chosen by the Legislature to achieve a proper legislative purpose bear a rational relationship to that purpose and are not arbitrary or discriminatory." *State ex rel. Harris v. Calendine,* 160 W.Va. 172, 179, 233 S.E.2d 318, 324 (1977) (footnote added). Thus the question raised under the facts of the present case is whether precluding safety

belt evidence in a civil action in which the crashworthiness of a vehicle is called into question bears a rational relationship to some legitimate State concern. *See Hartsock–Flesher Candy Co. v. Wheeling Wholesale Grocery Co.,* 174 W.Va. 538, 328 S.E.2d 144 (1985). A law will be upheld under the rational basis test as long as it bears a rational relationship to a legitimate state interest. *Sale ex rel. Sale v. Goldman,* 208 W.Va. 186, 194, 539 S.E.2d 446, 454 (2000).

■ In subsection (f) of West Virginia Code § 17C–15–49, the Legislature enlists the cooperation of the State Police, other state departments and agencies and county and municipal law-enforcement agencies with the Governor's Highway Safety Program to conduct an educational program to promote and encourage compliance with safety belt laws. The statute provides that "[t]his program shall be focused on the effectiveness of safety belts, the monetary savings and the other benefits to the public from usage of safety belts and the requirements and penalties specified in this law." *Id.* This provision embodies the purpose or intent of the Legislature in enacting the safety belt law: the Legislature sought to promote public safety by protecting drivers and passengers traveling on our state highways. Protection of the citizenry is a legitimate state interest. Based upon the facts before us, the evidentiary preclusion set forth in the mandatory safety belt law appears to be a reasonable extension of the concern of the Legislature for the protection of drivers and passengers by allowing them to stipulate to a fixed reduction in damages in order to seek recovery unimpeded by the safety belt defense when they are injured in an accident. Taken as a whole, West Virginia Code § 17C–15–49 represents a rational policy that punishes noncompliance with the safety belt mandate through fines if certain conditions are met,[8]

---

7. The due process clause of the West Virginia Constitution is set forth in Article III, section 10 as follows:

   No person shall be deprived of life, liberty, or property, without due process of law ....

8. Enforcement of the mandatory safety belt law is addressed in subsection (c) of West Virginia Code § 17C–15–39, which provides as follows:
   Any person who violates the provisions of this section shall be fined not more than twenty-five dollars. No court costs or other fees shall be assessed for a violation of this section.

but avoids a second "punishment" of denying or severely limiting an injured plaintiff's recovery in a related civil action. The public policy underlying the statute may also reflect legislative recognition that such evidence could prove highly prejudicial and confusing to the trier of fact. We additionally observe that the Legislature did not ignore the interests of defendants in such cases since it tempered the effect of the evidentiary preclusion by specifying a statutory method for mitigating damages. This legislative intent and purpose is furthered whether or not the evidence of safety belt use is limited or precluded under the terms of the statute. Accordingly we find that West Virginia Code § 17C–15–49(d) (1993) (Repl.Vol.2004), providing for the limitation or preclusion of the use of safety belt evidence in any civil action or proceeding for damages, has a reasonable and rational basis related to a legitimate state interest and does not violate the due process guarantee of Article III, section 10 of the West Virginia Constitution.

▮▮ When considering substantive due process challenges to statutory provisions, this Court is not at liberty to substitute its judgment for that of the Legislature. Of course, the Legislature is free to alter its policy statement by amending the safety belt statute to provide an exception for crashworthiness/enhanced injury cases. Thus, Ford's recourse for obtaining the relief it desires is legislative rather than judicial.

**B.  Sufficiency of Evidence**

▮▮ Ford next proposes that the lower court erred by not granting its request for judgment as a matter of law because Ms. Estep did not show that the Ford Ranger was defective under the standard established in *Morningstar v. Black & Decker Manufacturing Co.*, 162 W.Va. 857, 253 S.E.2d 666 (1979). Syllabus point four of *Morningstar* sets forth the relevant standard as follows:

In this jurisdiction the general test for establishing strict liability in tort is whether the involved product is defective in the sense that it is not reasonably safe for its

intended use. The standard of reasonable safeness is determined not by the particular manufacturer, but by what a reasonably prudent manufacturer's standards should have been at the time the product was made.

Ford maintains that the testimony of Ms. Estep's accident reconstruction expert, who was a professional registered engineer with specialties in machine design and mechanical engineering, did not set forth a reasonably prudent manufacturer's standard to which the jury could weigh the evidence. Ford further maintains that the only standard that the Estep expert proposed was that an air bag should always deploy when it would prevent injury and never deploy when it would not. Our review of the transcript of the relevant testimony of the expert does not support this conclusion.

▮▮ Before summarizing our findings regarding the expert's testimony, we observe that our task in reviewing a trial court's ruling on a motion for judgment as a matter of law "is to determine whether the evidence was such that a reasonable trier of fact might have reached the decision below." Syl. pt. 1, in part, *Mildred L.M. v. John O.F.*, 192 W.Va. 345, 452 S.E.2d 436 (1994). "While a review of this motion is plenary, it is also circumscribed because we must review the evidence in a light most favorable to the nonmoving party." Syl. pt. 3, in part, *Alkire v. First National Bank*, 197 W.Va. 122, 475 S.E.2d 122 (1996).

The record before us reveals that the defective nature of the product was demonstrated in various ways by Ms. Estep's reconstruction expert. In sum, the engineer testified that according to automotive industry standards an air bag is expected to deploy in a severe crash where there is a greater than twenty-five percent risk of serious injury or death to the occupants of a motor vehicle. He explained that whether the subject crash involved a head-on collision with the tree as suggested by Ms. Estep or a less direct crash into the tree because the

---

Enforcement of this section shall be accomplished only as a secondary action when a driver of a passenger vehicle has been detained

for probable cause of violating another section of this code.

vehicle was airborne as Ford proposed, the air bags should have deployed given the expert's calculations as to the change in velocity resulting from the collision. While the expert did not offer his own standard, he accepted Ford's test standards which were based on national standards to arrive at the speeds at which air bag deployment should occur. This expert also specifically noted the failure of Ford's system in this particular vehicle to detect the crash's severity. Viewing the evidence in the light most favorable to Ms. Estep as required, we find that the record shows that the *Morningstar* standard was satisfied and no reversible error was committed.

## C. Expert Testimony

As its next argument, Ford claims that Ms. Estep presented no evidence to show that an alleged defect in the Ranger caused her spinal injury since her theory of causation was founded on the false conclusion that the steering wheel in the vehicle was bent. Ford's contention is that the lower court erred by not granting judgment as a matter of law because it was shown on cross-examination that the testimony of Ms. Estep's second expert, a biomechanical engineer, was based on the false assumption that the steering wheel had been bent in the crash. Ford thus maintains that Ms. Estep failed to carry her burden of proof on injury and causation.

The biomechanical expert testified that the proximate cause of Ms. Estep's back injury was Ms. Estep being thrown forward over the steering wheel. During her testimony, the expert said that she reached this conclusion based on the representation of Ms. Estep's accident reconstruction expert that the steering wheel was bent. The record reflects that during cross-examination the expert on biomechanics said that she would have to go back and reconsider her computations if the steering wheel were not bent. No suggestion was made by Ford that the time be taken for this reconsideration to occur, nor were alternative calculations entered into evidence by Ford which would have demonstrated that the steering wheel had to be bent for this type of injury to occur. The jury was

informed of all of these matters during Ford's closing argument.

In addition to hearing the testimony of the expert, including cross-examination, the jury had viewed the accident scene, the Ranger involved in the accident and a picture of an undamaged steering wheel next to the steering wheel of the Estep Ranger which Ford had introduced into evidence. It was within the province of the jury to weigh the evidence before it and determine the credibility of witnesses. "When a case involving conflicting testimony and circumstances has been fairly tried, ... the verdict of the jury will not be set aside unless plainly contrary to the weight of the evidence or without sufficient evidence to support it." Syl. pt. 4, in part, *Laslo v. Griffith*, 143 W.Va. 469, 102 S.E.2d 894 (1958). The jury reached its conclusion within the parameters of the evidence presented. We conclude, therefore, that the lower court correctly refused to grant judgment as a matter of law on this issue.

## D. Jury Instruction

The final error Ford raises concerns the trial court's refusal to instruct the jury that compliance with relevant federal motor vehicle safety standards raises a rebuttable presumption that this vehicle was reasonably safe and not defective.

It is clear that "the refusal to give a requested jury instruction is reviewed [by this Court] for an abuse of discretion. By contrast, the question of whether a jury was properly instructed is a question of law, and the review is *de novo*." Syl. pt. 1, in part, *State v. Hinkle*, 200 W.Va. 280, 489 S.E.2d 257 (1996). Applying these standards we find no error.

This Court previously considered a jury instruction similar to the one at issue in *Johnson v. General Motors Corporation*, 190 W.Va. 236, 438 S.E.2d 28 (1993). In *Johnson* we decidedly stated that a jury may consider the federal safety standards, but that compliance with those standards is not conclusive proof that the design of the product was reasonable. *Id.* at 247, 438 S.E.2d at 39. The instruction given by the lower court reads as follows:

The Defendants in this case have asserted that their liability is determined in the light of whether the product was reasonably suited for the purpose for which it was intended in accordance with the generally accepted standards of the industry, having due regard for the existent state of technology and the state of art at the time the product was designed and manufactured. Industry standards are not conclusive as to ordinary care in design or manufacture but rather, are admissible evidence for your consideration.

Compliance by a manufacturer or seller with any federal or state statute or administrative regulation existing at the time a product was manufactured and prescribing standards for design, inspection, testing, manufacture, labeling or warning or instructions for use of a product may be considered by you when in [sic] determining the issue of product defect.

The instruction given in *Johnson* [9] clearly delineates the law in this area as applied to the facts in that case. We conclude that the instruction of the lower court in the case now before us also is a correct statement of the law even though it does not account for the rebuttable presumption suggested by Ford. We reach this conclusion recognizing that in *Johnson* neither our discussion nor the contents of the instruction under review in that case stated that compliance with national standards raises a rebuttable presumption. We appreciate Ford's desire to create a rebuttable presumption regarding compliance with federal safety standards, but find that the circumstances of this case do not provide a basis for requiring the same.

## IV. Conclusion

For the reasons disclosed in the foregoing discussion, the March 14, 2006, order of the Circuit Court of McDowell County is affirmed.

Affirmed.

Justice BENJAMIN dissents and reserves the right to file a dissenting opinion.

Justice JOSEPH P. ALBRIGHT not participating.

Senior Status Justice McHUGH sitting by temporary assignment.

BENJAMIN, J., dissenting:

I respectfully dissent from the majority's decision to affirm the circuit court's rulings in this case. In affirming the underlying rulings, the majority relies on W.Va.Code § 17C–15–49, observing that this statute is "central to the trial court's ruling." Op. at 351. As therein noted, W.Va.Code § 17C–15–49 not only mandates that all occupants of motor vehicles on public highways wear safety belts, but also that the statute "... contains a provision limiting when and for what purpose evidence of violations of the safety belt law is admissible in court." *Id.* Specifically, the statute provides that a violation of the statute is not admissible as evidence of fault and is also not admissible in mitigation of damages. I conclude that the evidentiary direction of W.Va.Code § 17C–15–49 violates the Rule–Making Clause and the Separation of Powers Clause of the West Virginia Constitution.

The Separation of Powers Clause of the West Virginia Constitution provides in relevant part that "[t]he legislative, executive and judicial departments shall be separate and distinct, so that neither shall exercise the

---

**9.** The instruction examined in *Johnson* stated in pertinent part:

In the course of the trial of this lawsuit, evidence has been introduced to the effect that the vehicle, manufactured and sold by Defendant, complied with certain Federal Motor Vehicle Safety Standards established by the National Highway Transportation Safety Administration.

With respect to those Federal Motor Vehicle Safety Standards, you are instructed that compliance by a manufacturer with federal standards, existing at the time the product was manufactured and prescribing standards for design, inspection, testing, or manufacture of a product, is a factor which you may take into consideration in determining whether the car was defective. It is not of itself conclusive either way.

I charge you that industry standards are not conclusive as to ordinary care and design or manufacture, but rather are admissible evidence for your consideration, together with all the other evidence in this case.

190 W.Va. at 247, 438 S.E.2d at 39.

powers properly belonging to either of the others[.]" W.Va. Const. art. 5, § 1. The Separation of Powers Clause "is not merely a suggestion, it is part of the fundamental law of our State and, as such, it must be strictly construed and closely followed." *State ex rel. Barker v. Manchin,* 167 W.Va. 155, 279 S.E.2d 622 (1981). In considering the Separation of Powers Clause, this Court has not "hesitated to utilize the doctrine where we felt that there was a direct and fundamental encroachment by one branch of government into the traditional powers of another branch of government." *Appalachian Power Co. v. PSC,* 170 W.Va. 757, 759, 296 S.E.2d 887, 889 (1982).

Pursuant to the Rule–Making Clause of the West Virginia Constitution, the Supreme Court of Appeals "shall have power to promulgate rules for all cases and proceedings, civil and criminal, for all of the courts of the State relating to writs, warrants, process practice and procedure, which shall have the force and effect of law." W.Va. Const. art. 8, § 3. "Under article eight, section three of our Constitution, the Supreme Court of Appeals shall have the power to promulgate rules for all of the courts of the State related to process, practice, and procedure, which shall have the force and effect of law." Syl. Pt. 1, *Bennett v. Warner,* 179 W.Va. 742, 372 S.E.2d 920 (1988). In this regard, "[t]he West Virginia Rules of Evidence remain the paramount authority in determining the admissibility of evidence in circuit courts." Syl. Pt. 7, in part, *State v. Derr,* 192 W.Va. 165, 451 S.E.2d 731 (1994). Pursuant to the constitutional authority granted to this Court by the Rule–Making Clause, "a statute governing procedure [or evidentiary] matters in [civil or] criminal cases which conflicts with a rule promulgated by the Supreme Court would be a legislative invasion of the court's rule-making powers." *State v. Arbaugh,* 215 W.Va. 132, 138, 595 S.E.2d 289, 295 (2004) (Davis, J., dissenting) (quoting *People v. Hollis,* 670 P.2d 441, 442 (Colo.Ct.App.1983)).

To the extent W.Va.Code § 17C–15–49 conflicts with this Court's Rules of Evidence, it is unconstitutional and must be invalidated. *West Virginia Div. of Highways v. Butler,* 205 W.Va. 146, 516 S.E.2d 769 (1999) (invalidating a statute that was in conflict with W.Va. R. Evid., Rule 702); *Mayhorn v. Lo-*

*gan Med. Found.,* 193 W.Va. 42, 454 S.E.2d 87 (1994) (invalidating a statute that was in conflict with W.Va. R. Evid., Rule 702); *Teter v. Old Colony Co.,* 190 W.Va. 711, 441 S.E.2d 728 (1994) (invalidating a statute that was in conflict with W.Va. R. Evid., Rule 702). Rule 402 of the West Virginia Rules of Evidence provides:

> All relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, by the Constitution of the State of West Virginia, by these rules, or by other rules adopted by the Supreme Court of Appeals. Evidence which is not relevant is not admissible.

The admissibility of evidence in civil trials is determined by our Rules of Evidence pursuant to our constitutional rule-making power. In attempting to determine what is and is not admissible in a civil trial, W.Va.Code § 17C–15–49 conflicts directly with Rule 402 of our Rules of Evidence. Consequently, it is in violation of the Separation of Powers Clause of the West Virginia Constitution and the Rule–Making Clause of the West Virginia Constitution. W.Va. Const. art. 5, § 1, art. 8, § 3. I conclude that the evidentiary provisions of W.Va.Code § 17C–15–49 are unconstitutional.

Accordingly, I dissent from the majority opinion.