# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**John R. Hooper,**
**Plaintiff Below, Petitioner**

**vs)  No. 16-1226** (Marion County 15-C-110)

**1543 Country Club Road Manor Operations LLC,**
**d/b/a Pierpont Center at Fairmont Campus and Genesis Healthcare LLC**
**Defendant Below, Respondent**

**FILED**

**January 19, 2018**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner John R. Hooper, by counsel W. Jeffrey Volmer, Benjamin B. Ware, and Elise N. McQuain, appeals the December 2, 2016, order of the Circuit Court of Marion County that denied his motion for a new trial. Respondents 1543 Country Club Road Manor Operations LLC d/b/a Pierpont Center at Fairmont Campus and Genesis Healthcare LLC, by counsel Mark A. Robinson and Lindsey M. Saad, filed a response to which petitioner filed a reply brief.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

Petitioner's mother, Joan D. Fluharty ("the decedent"), was a resident of Respondent Pierpont Center ("the Center"), a nursing home in Fairmont, West Virginia, when on October 6, 2014, she went outside for a "smoke-break," fell, hit her head on a concrete patio, and died from her injuries. At the time of her fall, she was supervised by a housekeeper at the facility. Petitioner filed suit on his mother's behalf on May 14, 2015, asserting numerous claims against the Center, and a "direct corporate negligence" claim against Respondent Genesis, Healthcare LLC ("Genesis"). Genesis is a Delaware business that operates nursing homes, including the Center. In his complaint petitioner alleged that Genesis owed and breached its duties of care to petitioner by (1) failing to properly fund, budget, operate, oversee, staff, and manage the Center in the manner of a reasonably prudent person or corporation; (2) failing to properly allocate resources and staffing to the Center, and ensure the center was properly staffed, provided with adequate resources, and that the staff was adequately trained and supervised; and (3) failing to provide appropriate policies, procedures, and guidance to the Center.

Following discovery, the matter went to trial on August 29, 2016. Regarding his claim against Genesis, petitioner introduced evidence that the Center was required to follow Genesis's corporate polices, including a policy that permitted housekeeping staff to supervise residents

1

during smoke-breaks. Petitioner also admitted into evidence an August 5, 2014, survey that showed there were staffing problems at the Center. Petitioner also introduced evidence that the use of a housekeeper to supervise residents was a result of staffing problems, including an overall nursing staff turnover rate of 88%. The Center's administrator testified that she did not set the Center's budget, and that she was not permitted to use any budget surplus to hire new staff, in spite of the turnover rate. Petitioner presented testimony that Genesis established all policies and procedures for the Center, including policies related to fall management and prevention and policies concerning supervision of the resident's smoke-breaks. Petitioner also presented evidence that Genesis provided software to the Center that was malfunctioning. At the time of her death, the decedent had six prior falls, documented by staff, but the software reflected none. Petitioner also presented evidence that the Center received more than "twice the number of health deficiency citations averaged by nursing homes in West Virginia, and four times the number averaged in the United States." In spite of this record, petitioner presented evidence that the Center's director was awarded a bonus for the year. Samantha Yowell, the housekeeper supervising the decedent at the time of her fall, testified that she was "completely unqualified" to supervise residents, hated being in that position, but did not complain for fear of being fired, and that she felt responsible for the decedent's death.

Respondent presented evidence from Mark Levine, a licensed nursing home administrator, who testified that the Center's fall mitigation practices met the standard of care and that it is standard in the industry for one person to supervise smoke-breaks. Mr. Levine testified further that there was no reason to believe that the decedent's fall could have been prevented by having more qualified staff present; and that the Center was staffed appropriately to meet West Virginia regulations and the needs of residents.

Prior to jury deliberations, petitioner proposed a negligence instruction, modeled after the West Virginia Pattern Jury Instructions for Civil Cases. Respondent submitted instructions, including an instruction for corporate negligence, and filed a motion for summary judgment. The circuit court rejected petitioner's proposed instruction, and respondent's motion, and adopted the following instruction, which was read to the jury:

> Plaintiff alleges that defendant Genesis Healthcare, LLC is liable for the alleged injuries of [the decedent]. Defendant Genesis Healthcare LLC denies that it is responsible for any alleged injuries as the control and operation of the care rendered is exclusively the responsibility of Pierpont Center, who is the responsible party under West Virginia law. The court instructs the jury that it is a general principle of corporate law that a "parent corporation" is not liable for the acts of its subsidiaries.

> A company is not liable for another company's acts, unless it controls the day-to-day operations of that company. A company is not liable for activities that involve another company but are consistent with investor status, such as monitoring performance, supervision of finance and budget decisions and articulation of general policies and procedures.

2

To decide that Genesis Health Care, LLC may be held responsible for plaintiff's claims, you must find that sufficient evidence was presented to show that defendant Genesis Healthcare, LLC actually controlled the conduct of Pierpont Center that injured [the decedent]. If you find that defendant Genesis Health Care LLC did not exercise actual control over conduct of a defendant that breached a duty to [the decedent], then your verdict must be in favor of Defendant Genesis Healthcare.

On September 2, 2016, the jury returned a verdict in favor of the Center and Genesis on all counts in the complaint, and the circuit court's judgment order was entered on September 19, 2016. Petitioner filed a timely motion for new trial, which was denied after a hearing. At the hearing, petitioner argued that the circuit court erroneously instructed the jury regarding corporate negligence; that the instruction did not reflect petitioner's theory of the case, and that the instruction was prejudicial and binding in nature. The circuit court denied petitioner's motion. Petitioner now appeals the December 2, 2016, order denying his motion for new trial.

In this appeal petitioner's sole assignment of error alleges that the circuit court erred in giving an erroneous binding jury instruction regarding petitioner's negligence claim. Petitioner asserts that the circuit court committed reversible error when it instructed the jury on a vicarious liability theory, because petitioner's claim was pled and litigated as a direct corporate negligence claim against Genesis, pursuant to this Court's decision in *Manor Care, Inc., v. Douglas*, 234 W. Va. 57, 763 S.E.2d 73 (2014).

We have held that,

"[T]he ruling of a trial court in granting or denying a motion for a new trial is entitled to great respect and weight, [and] the trial court's ruling will be reversed on appeal [only] when it is clear that the trial court has acted under some misapprehension of the law or the evidence." Syl. pt. 4, in part, *Sanders v. Georgia–Pacific Corp.,* 159 W.Va. 621, 225 S.E.2d 218 (1976).

Syl. Pt. 2, *Estep v. Mike Ferrell Ford Lincoln-Mercury, Inc.*, 223 W. Va. 209, 672 S.E.2d 345 (2008). Further, "'[a]s a general rule, the refusal to give a requested jury instruction is reviewed [by this Court] for an abuse of discretion. By contrast, the question of whether a jury was properly instructed is a question of law, and the review is de novo.' Syl. pt. 1, *State v. Hinkle,* 200 W.Va. 280, 489 S.E.2d 257 (1996)." Syl. Pt. 9, *Estep*, 223 W. Va. at 213, 672 S.E.2d at 345. With these standards in mind, we consider petitioner's assignment of error.

Petitioner argues that a parent company of a nursing home may be held directly liable for its own corporate negligence that contributes to the death or injury of a resident of the home. Petitioner next argues that he asserted a "non-vicarious, direct corporate negligence claim" against Genesis, modeled after the claim in *Manor Care. See Manor Care*, 234 W.Va. at 66, 763 S.E.2d at 82. In response, respondent asserts that petitioner failed to establish that Genesis should be held directly liable for its wrongful conduct. In its order, the circuit court found that its instruction as to corporate negligence was based on the decision of *United States v. Bestfoods*, 524 U.S. 51, 61 (1998), and was consistent with state law. We agree, and find no error.

In *Bestfoods*, which determined a parent company's liability under a federal statute for operating a polluting chemical facility, the United States Supreme Court articulated that "[a]ctivities that involve the facility but which are consistent with the parent's investor status, such as monitoring of the subsidiary's performance, supervision of the subsidiary's finance and capital budget decisions, and articulation of general policies and procedures, should not give rise to direct liability." *Id.* at 72. The "critical question," as it applies to direct liability of a parent corporation, "is whether, in degree and detail, actions directed to the facility by an agent of the parent alone are eccentric under accepted norms of parental oversight of a subsidiary's facility." *Id.*

Petitioner argues that they were not required, under *Manor Care*, to present evidence that Genesis exercised actual control over the operations of the Center, but that Genesis committed its own wrongs and that the jury could find Genesis directly liable for Genesis's conduct. However, we note that in *Manor Care*, the plaintiff presented evidence that was sufficient for a jury to determine that the conduct of the parent company, Manor Care, was "reprehensible," and included testimony from a staff member that described the conditions as "horrible" and "unbearable." 234 W. Va. at 99, 763 S.E.2d at 83. Another employee complained that when they reported the systemic resident neglect to a Manor Care administrator, the administrator "yelled at her for documenting patient neglect and removed the report from the books . . . She accused the HCR Manor Care administrator of covering up the incident." *Id.* Importantly, the plaintiff in *Manor Care* presented evidence that the defendants "actively concealed and covered-up their misconduct," by "falsifying staffing schedules," "intentionally miscalculating nursing hours," "destruction of written complaints of neglect," "reprimanding employees for documenting neglect," and "increasing the number of staff during State inspections." *Id.* That is not the nature of the evidence presented by petitioner in this matter.

Here, petitioner presented evidence that Genesis set policies, procedures, and budgets for the Center. In addition, he introduced evidence showing that the Center received more citations than is average for the State. Petitioner did not present evidence that Genesis engaged in fraudulent or intentionally misleading behavior. In order to prove that Genesis was "directly liable" for the negligence of the Center, petitioner was required to present evidence that Genesis exercised actual control over the operations of the Center. *See Bestfoods*, 524 U.S. at 67 (citing *Jacksonville Elec. Auth. V. Bernuth Corp.*, 996 F.2d 1107, 1110 (11th Cir. 1993) (parent is liable if it "actually exercised control over, or was otherwise intimately involved in the operations of, the [subsidiary] corporation immediately responsible for the operation of the facility[.]") Petitioner did not present evidence that Genesis was directly involved in the day-to-day operations of the facility. While Petitioner complains that Genesis provided software, and that the software failed to document the decedent's previous falls, petitioner did not present any evidence, as presented in *Manor Care*, that showed Genesis actively concealed or covered up the incident in question or any other instances of injury or misconduct. Consequently we find that based upon the evidence presented, the circuit court was not operating under a misapprehension of the law by instructing the jury as stated, and did not abuse its discretion by denying petitioner's instruction regarding direct negligence.

For the foregoing reasons, we affirm.

4

Affirmed.

**ISSUED:** January 19, 2018

**CONCURRED IN BY:**

Chief Justice Allen H. Loughry II
Justice Menis E. Ketchum
Justice Elizabeth D. Walker

**DISSENTING:**

Justice Robin Jean Davis
Justice Margaret L. Workman