No. 22-ICA-2 – *Amanda C. v. Christopher C.*

**FILED**

**November 18, 2022**

EDYTHE NASH GAISER, CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

SCARR, J., concurring:

I concur in the majority's decision to consider the July 8, 2022, final Order Establishing Custodial and Child Support Allocation of the Family Court of Upshur County to be a temporary custodial allocation order, which shall remain in place pending an evidentiary hearing, and to remand this case to the Family Court of Upshur County for further proceedings consistent with the majority opinion. I further concur with the majority's analysis and reasoning concerning proper application of West Virginia Code § 48-9-206 (2022). However, the majority's opinion does not address the principal basis for the appeal, i.e., the situation created due to a scheduling conflict and the failure of the presiding judges involved to resolve the conflict, and therefore I would go further.

As indicated in the majority opinion, the Petitioner asserts a single assignment of error. She argues that the Family Court of Upshur County abused its discretion when it conducted a final evidentiary hearing on child custodial allocation without the presence of Petitioner or her counsel despite receiving notice of counsel's scheduling conflict between the Webster County Circuit Court and the Family Court of Upshur County. Petitioner maintains that pursuant to West Virginia Trial Court Rule 5, the courts involved should have resolved their conflicting schedules, and if not, the Family Court of Upshur County should not have proceeded with the final evidentiary hearing on child custodial allocation in the absence of the Petitioner and her counsel. The issues raised

1

by the appeal are understandably the focus of all the briefing and oral argument in the case and should be addressed more directly, albeit concisely.

First, the failure of the presiding judges to resolve the scheduling conflict is not itself a basis for appeal. Moreover, this Court does not have the power or authority to revise the scheduling conflicts rules; not to suggest that any revisions are necessary. Rather the primary issue raised by the appeal is whether Petitioner's due process rights were violated when the Family Court proceeded to conduct the evidentiary hearing without Petitioner and her counsel present and with a meaningful opportunity to be heard. It is axiomatic that due process of law is guaranteed by both the West Virginia and the United States Constitutions. *See* W. Va. Const. art. III, § 10; U.S. Const. amend. V and amend. XIV, § 1; Syl. Pt. 1, *Sisler v. Hawkins*, 158 W. Va. 1034, 217 S.E.2d 60 (1975). This right certainly includes the right to notice and the right to be present in person and/or by counsel during all trial proceedings that might affect one's life, liberty or property interests. Syl. Pt. 2, *Sisler v. Hawkins*, 158 W. Va. 1034, 217 S.E.2d 60 (1975). There is no question that a parent's interest in custody of their child is a fundamental personal liberty protected and guaranteed by the due process clauses. Syl. Pt. 1, *In re Willis*, 157 W. Va. 225, 207 S.E.2d 129 (1973). "It is clear that the right of a natural parent to raise his children is a fundamental right guaranteed by the due process clauses of the United States and West Virginia Constitutions. Due process prohibits a court or other arm of the State from terminating the parental rights of a natural parent having legal custody of his child without notice and the opportunity to be heard." *State ex rel. Miller v. Locke*, 162 W. Va. 946, 948, 253 S.E.2d

2

540, 542 (1979) (citing *Stanley v. Illinois*, 405 U.S. 645 (1972)); *Tucker v. Tucker*, 176 W. Va. 80, 83, 341 S.E.2d 700, 702-703 (1986) (per curiam) (citing *Acord v. Acord*, 164 W. Va. 562, 264 S.E.2d 848 (1980)). The Supreme Court has also recognized a parent's due process right to the assistance of counsel in proceedings which may result in the termination of parental rights. Syl. Pt. 7, *In re Lindsey C.*, 196 W. Va. 395, 473 S.E.2d 110 (1995). These rights are also statutorily provided in abuse and neglect cases. *See* W. Va. Code § 49-4-601; *State ex rel. H.S. v. Beane*, 240 W. Va. 643, 814 S.E.2d 660 (2018). The foregoing authority clearly establishes that parents are entitled to a meaningful hearing, i.e., the right to be represented by counsel and to testify and to present and cross-examine witnesses before their parental rights may be terminated or restricted. Proceeding to conduct the evidentiary hearing on May 11, 2022, without the ability of counsel to participate, resulted in the Family Court hearing from only one side and denied the Petitioner due process. The Family Court's decision may not have been any different had both sides been heard, and on remand the Court's decision may or may not change, but both parties shall have the opportunity to be heard, a hallmark of our judicial system.

Moreover, it is essential to note that Trial Court Rule 5, Scheduling Conflicts, provides a process to be followed when an attorney is faced with an imminent scheduling conflict. The Rule and the process are mandatory as to the duty of both the attorney and the judges involved in the scheduling conflict. The attorney "shall" provide written notice of the imminent scheduling conflict to the opposing counsel, the clerks of the courts involved, and the presiding judges. Rule 5.06. The presiding judges "shall promptly confer,

3

[and] resolve the conflict…." Rule 5.05. Without engaging in an independent analysis of the priorities and factors to be considered to resolve the scheduling conflict in the instant case, it should be noted that Trial Court Rule 5 simply does not contemplate a situation where the judges involved are unable or unwilling to resolve the conflict. The Rule does not provide direction to counsel in the event the judges involved do not resolve the conflict. Rather, the Rule contemplates and expects that reasonable judges, acting in good faith and with comity towards each other, would and should, in some fashion, always be able to resolve a scheduling conflict.

Nevertheless, despite filing and serving the required notice of conflict, it remains incumbent upon counsel to take reasonable and appropriate additional steps to try to eliminate the conflict, and when unsuccessful, to preserve the record and protect the interests of the client. Some of the steps that may help resolve a conflict, or if not, would at least help preserve the record and protect the interests of the client, include, but are not limited to:

- negotiating with opposing counsel to obtain consent and agreement to the continuance and rescheduling of one of the conflicting proceedings;
- proposing/requesting the option of remote participation in one of the proceedings;
- filing a formal motion for continuance of one, or both, of the conflicting proceedings;

4

- filing a formal writ of prohibition to prevent a hearing from proceeding without the presence and participation of a party and/or their counsel;

- formally objecting to the hearing proceeding without the presence and participation of a party and/or their counsel;

- arranging for substitute counsel to attend and participate in one of the conflicting proceedings, or at a minimum, move for a continuance and place an objection on the record;

- in appropriate cases and situations, proposing a temporary compromise resolution of issue(s) in dispute;

- requesting a subsequent hearing and/or reconsideration of any decision made as a result of the hearing that proceeded in the absence of a party and/or counsel; and

- vouching the record, in writing before/after the hearing.

At a minimum, counsel must apprise both courts of their decision and intention with respect to attendance at the conflicting proceedings. Counsel cannot, and should not, simply not show up at one of the scheduled proceedings and hope for some salvation.

At oral argument, counsel for Respondent made the prediction that, if the Court were to reverse and remand the case to Family Court so that a full evidentiary hearing with both parties and their counsel participating could occur, it would create a serious

problem in that, in the future, parties and counsel may simply decide not to show up for hearings and then argue that they have been denied due process. This is not a realistic or legitimate concern. Nothing in this opinion suggests that any party or counsel can intentionally and voluntarily disregard their obligation to attend and participate in properly scheduled and noticed proceedings. They do so at their own risk. In most instances, such failure to attend and participate in a proceeding constitutes a voluntary and intentional waiver of their due process rights and a second chance or do-over is not required. Obviously, this case does not involve an intentional and voluntary decision not to attend and participate in a scheduled proceeding. This case involves a scheduling conflict and a failure of the presiding judges to cooperatively resolve the conflict, resulting in counsel's inability to participate. Counsel found himself in the untenable position of deciding which proceeding to attend and which to forgo. An unresolved, noticed scheduling conflict presents a true catch-22, a no-win situation, since counsel cannot be present in two different places at once. As such, in most instances, an unresolved scheduling conflict may be a reasonable, valid excuse for failure to attend a proceeding. Presiding judges should keep this in mind when confronted with a scheduling conflict and take appropriate steps to resolve it.

Accordingly, I concur in the majority's analysis and reasoning and its decision to remand the case to the Family Court of Upshur County for further proceeding to allow proper application of current governing law, but I go further and believe remand

is necessary so that a full evidentiary hearing can occur to provide due process and ensure that both parties will have a meaningful opportunity to be heard.